NELLIE FOWLKES v. FRED W. FLEMING and FRANCIS M. WILSON, Receivers of Kansas City Railways Company, Appellants.—17 S. W. (2d) 511.

Division One, March 29, 1929.

*Charles L. Carr, John R. Moberly* and *E. M. Tipton* for appellants.

*Mosman, Rogers & Buzard* and *Ralph E. Griffith* for respondent.

LINDSAY, C.—The plaintiff had judgment for damages in the sum of $14,000, for injuries alleged to have been received by her while she was a passenger on a street car operated by the defendants. The plaintiff was employed as a saleswoman in a millinery store in Kansas City, and on the evening of March 3, 1924, while on her way from her place of employment to her home, was a passenger on one of defendant's street cars, eastbound on Twelfth Street. She took a seat near the rear end of the car. It stopped at Brooklyn Avenue to take on passengers. Almost immediately after coming to a stop the rear end of this car was struck by another eastbound car, moving at a speed of about ten miles an hour. The force of the collision was such that many of the windows of both cars were broken. Plaintiff was thrown from her seat, onto the floor of the car. She testified that she did not have a clear remembrance of what happened thereafter for several hours, and did not remember clearly how she got up and got off the car; but she remembered trying to get up from the floor between the seats where she was thrown; remembered leaning against something which she thought was the front door of the car; remembered sitting on a bench near where the car had stopped, and that a crowd of people gathered about the place of collision; that she started home, walking, and remembered at different times on the way sitting down upon the curb, and remembered finding herself on Thirteenth Street, and then at home, the apartment at 1310 Benton Boulevard, where she lived with her unmarried children, a daughter twenty-two years old, and a son nineteen years old. During the night she suffered pain, was nauseated, and vomited frequently. The plaintiff's daughter testified that her mother vomited blood, and was extremely nervous, and not sufficiently at herself at that time to relate much of what had happened. A doctor was called the next day, who examined plaintiff, and testified he found her nervous and hysterical; found a number of bruises and sore places on her person, principally about the lower part of the spine and across the pelvis. On the day following that, the plaintiff's son called Dr. Dorsey, who examined the plaintiff, and at his direction she was taken to St. Mary's Hospital, that being necessary, the doctor said, in order that she could have the requisite care and treatment. She remained at the hospital twenty days or more, and was treated there by Dr. Dorsey; afterward was removed to her home, and thereafter was treated for some months by an osteopath, and also by Dr. Dorsey. Dr. Dorsey's testimony was that the plaintiff had suffered a strain of the left sacro-iliac joint, causing a tilting of the pelvis. He also characterized her condition at the time she was taken to the hospital, as ''an upset, nervous condition, amplified by pyloric spasm.'' He defined pyloric spasm as being an exaggerated muscular action of the

stomach, which causes the closing of the outlet. He further spoke of it as a "real spasm of the outlet, which will close for awhile, and then open, then shut up again, especially when food is in the stomach." The evidence for the plaintiff was to the effect that, prior to the accident, she was a healthy woman and able to work, and did work in her regular employment, every day; but that afterward, as a result of said injury, she was unable to do any work at all, was obliged to use a cane in walking, and could not go about away from her apartment without the aid of some other person. Further reference will be made to the evidence in connection with the questions discussed.

I. The defendants complain of the action of the trial court in giving plaintiff's instructions numbered 1 and 2, and refusing defendants' instructions 4 and 10. In addition thereto, it is insisted that the verdict is grossly excessive, and the result of bias and prejudice.

Plaintiff's Instruction 1 is as follows:

"The court instructs the jury that if you believe from the evidence that the plaintiff was a passenger upon a car of defendants at the time she claims to have been injured, then, having received plaintiff upon board of such car, the due obligation of the defendants to plaintiff was to use the highest degree of care practicable among prudent, skillful and experienced men in that same kind of business, to carry her safely, and a failure of the defendants (if you believe there was a failure) to use such highest degree of care would constitute negligence on its part, and defendants would be responsible for all injuries resulting to plaintiff, if any, from such negligence, if any. And if you believe from the evidence that there was a collision between two cars operated by the defendants, on one of which plaintiff was a passenger (if you believe she was a passenger thereon), the presumption is that it was occasioned by some negligence of the defendants, and the burden of proof is cast upon the defendants to rebut this presumption of negligence and establish the fact that there was no negligence on their part, and that the injuries, if any, were occasioned by an inevitable accident, or by some cause which such highest degree of care could not have avoided."

The instruction is one which has been approved many times in cases of this character. It is a literal copy of the instruction discussed and approved in Price v. Metropolitan Street Railway, 220 Mo. 435. See also Powell v. Railroad, 255 Mo. 420; Trowbridge v. Fleming, 269 S. W. 611, 614. It is now assailed on several grounds. Primarily, it is asserted that the instruction shifted the burden of proof to defendants without requiring a finding of injury to the plaintiff, and that this was improper for the reason that the presumption of negligence, on the part of the carrier, never arises until the plaintiff has

established the relation of passenger and carrier, accident or untoward occurrence, and resulting injury. A long line of cases is cited: Robinson v. St. Louis & Sub. Railroad, 103 Mo. App. 110, 114; Lemon v. Chanslor, 68 Mo. 340; Hurck v. Railroad, 252 Mo. 39, 1. c. 47; Van Tresse v. Public Service Co., 4 S. W. (2d) 1095; Laible v. Wells, 296 S. W. 428, 430; Gardner v. Metropolitan Street Ry., 223 Mo. 391, 419; Trowbridge v. Fleming, 269 S. W. 610, 614; Stofer v. Dunham, 208 S. W. 641, 645; Furnish v. Mo. Pac. Ry., 102 Mo. 438, 452; Stauffer v. Railroad, 243 Mo. 305, 317; Partello v. Mo. Pac. Ry., 240 Mo. 122, and other cases.

Next, it is complained of the instruction, that it allowed the jury to presume injuries, from proof of accident, and placed upon the defendants the burden of disproving plaintiff's alleged injuries, or, if she was injured, proving that her injuries did not result from the accident. As applicable thereto, counsel cite the line of authorities above mentioned.

The next objection is, that the "instruction submitted plaintiff's case on the *res ipsa loquitur* doctrine, after plaintiff's evidence demonstrated clearly, and without contradiction, that she had knowledge of the specific cause of the accident, thereby broadening the issues made by the proof." There are yet other objections made to this instruction which will be noted, but the three mentioned are those chiefly requiring consideration.

The plaintiff pleaded general negligence on the part of defendants. The petition charged the collision of the two cars as the negligent act resulting in the plaintiff's injury. The case stated in the petition is therefore one under the doctrine, *res ipsa loquitur*. The answer was a general denial.

Counsel for defendants, under the third specification now to be considered, argue that the evidence for plaintiff took the case out of the rule, *res ipsa loquitur*. The plaintiff called the motorman who operated the rear car, who, on his direct examination testified to the fact of the occurrence of the collision of his car with the one in front of it at Brooklyn Avenue, on the 3d of March, 1924. His cross-examination is as follows:

"Q. You did not run into that car on purpose? A. No, sir.

"Q. You ran into it because you could not help it? A. Yes."

His redirect examination by counsel for plaintiff is as follows:

"Q. Why couldn't you help it? A. The brakes would not work.

"Q. The brakes had been working up until you tried to stop it that time? A. They had worked before that—I had a little confusion with them before.

"Q. But you had been able to stop it before? A. Yes.

"Q. And on this occasion when you undertook to stop for some reason they failed to work. That is correct, isn't it? A. Yes, sir."

The witness was then excused, but was immediately recalled for further direct examination, as follows:

"Q. Mr. Sadler asked you about trouble with the brakes. Had you had some trouble before this? A. I had a little trouble before that.

"Q. And before you had passed the inspector at Twelfth and Wyandotte, somewhere along in there? A. Yes, sir.

"Q. You mean you had trouble before you passed the inspector? A. Yes, sir."

We consider first, the contention of defendants that upon the evidence just quoted, the only evidence tending in any way to explain the collision, the case made was not one within the rule, *res ipsa loquitur*.

In Price v. Metropolitan Street Railway, 220 Mo. 435, a case similar to the case at bar, the petition charged only general negligence. In that case plaintiff was a passenger on a cable train, which, while moving up an incline, stopped, and then started backward down the incline, and running back with increasing speed, collided with another cable train of defendant, whereby plaintiff was injured. The plaintiff introduced as part of her case in chief a number of witnesses who gave much testimony as to the character of the appliances used, and manner of operation of the cable train, the condition of the track, and of the appliances, at the time, and immediately prior to the time of the collision. The motorman testified that in going up the incline "his grip broke with a snap, and that he put on the automatic brake, and then the ratchet brake, but was unable to stop the train;" that after the collision he took out the grip and found it broken, the break being fresh throughout. It was contended that because the plaintiff on her case in chief put in proof of some specific acts of negligence, she was thereby precluded from the presumption of negligence to which she was entitled under her petition. That contention was denied. It was said, l. c. 456: "In so doing she assumed a burden that she did not have to assume in making out a prima-facie case, but it does not lose her the right of resting upon the presumption, if the evidence so introduced does not clearly show what did cause the accident." After reference to certain Massachusetts decisions, stating the rule, in like situation, it was said, l. c. 457: "This is different from a case wherein the plaintiff pleads that the collision was occasioned by one or more specific acts of negligence. When she so pleads it rises to the dignity of an admission of record, that she knew the cause of the accident. Not only so, but she points out specifically the negligent acts, and must prove them, and recover, if at all, upon the negligent acts pleaded. A mere attempt to prove negligent acts hardly justifies the conclusion that a plaintiff knows the cause of the accident."

728

The rule stated in the Price case is in accord with the authorities generally. [10 C. J. 1028, 1029, sec. 1427.] It applies only in cases where the defendant is charged with negligence generally, and not where specific acts which caused the injury are alleged.

A case we notice upon the question, is Kinchlow v. Kansas City K. V. & W. Railway, 264 S. W. 416. In that case the rear end of the car in which the plaintiff was seated, while stopped at a street crossing, was struck by another car. The cause of the collision was the defective brakes of the colliding car. The motorman of that car was called as a witness by the plaintiff, and testified that the valve for operating the brakes was "stopped"; that he knew it was out of order and had been giving trouble for several months. Disposing of an objection made to an instruction for the plaintiff, this Division in an opinion by SMALL, C., said, l. c. 420: "It is not contended plaintiff's petition alleges specific negligence, but is admitted it only alleges general negligence of defendant in operating its cars as the cause of the injury. Under such circumstances, by the proof of specific acts of negligence plaintiff does not waive the presumption of defendant's negligence which arises from proof of the relationship of carrier and passenger and plaintiff's injury." The testimony of the motorman in this case does not suffice to change the character of the case; does not of itself, deprive plaintiff of the benefit of the presumption, and therefore we hold the instruction is not subject to the objection that it broadens the issues beyond the proof. We therefore overrule defendants' objection to plaintiff's instruction 1 founded upon the testimony of the motorman.

We recur to the complaints first stated—the assertion that the instruction improperly and prematurely shifted the burden of proof, allowed the jury to presume injuries, and placed the burden upon defendant to disprove the same. The cases cited by counsel announce the rule that the presumption of actionable negligence on the part of the defendant in cases of this character must be founded upon evidence showing the relation of passenger and carrier, the occurrence of a collision or other event not usual in the operation of cars, and resultant therefrom, injury to the passenger. Among cases cited by counsel of the character of this case, and announcing the foregoing essentials are the following: Lemon v. Chanslor, 68 Mo. 340; Hurck v. Railroad, 252 Mo. 39; Van Tresse v. Kansas City P. S. Co., 4 S. W. (2d) 1095; Stofer v. Dunham, 208 S. W. 641; Gardner v. Metropolitan Street Ry. Co., 223 Mo. 391; Dougherty v. Railroad, 97 Mo. 647; Laible v. Wells, 296 S. W. 428; Logan v. Railway, 183 Mo. 582, and others. Of course all of these cases announce the rule that the burden is upon the plaintiff in such cases to show the relation of passenger and carrier, the collision, or other unusual

occurrence in the operation of the car or train, and injury resulting therefrom to the passenger. We are also cited to a line of cases as announcing the rule that it is only *after* these things are shown, that the presumption arises that the injury was the result of negligence on the part of the defendant, and that only after such showing is made, is the burden devolved upon the defendant to rebut the presumption that the plaintiff's injury was the result of defendant's negligence. Cases cited, as showing when, and under what conditions what is termed the burden of proof shifts to defendant, to rebut the presumption of negligence may be mentioned: Bell v. Railroad, 125 Mo. App. 660; Goodloe v. Metropolitan Street Railway, 120 Mo. App. 194; Clark v. Railway, 127 Mo. 197; Och v. M. K. & T. Ry., 130 Mo. 27; Smiley v. Railway, 160 Mo. 629. The list need not be lengthened by the mention of others.

Upon the question under consideration we have in mind cases between passenger and carrier, where there is an unusual occurrence in the operation of an instrumentality under the entire control of the carrier, and where the circumstances of the accident are such that it could not well have occurred, except through negligence on the part of the carrier. Such is this case. Counsel for appellant concede that the instruction in almost identical form has been permitted to stand in numerous cases, but argue that the approval of such an instruction in other cases is not authority for approval of the same instruction here, and say that this is so, because, several questions were ever present in this case, which were never raised in the cases where such an instruction was approved.

In the Price case, supra, it is stated that the objection to the instruction (identical with the one here) was that it "too broadly states the rule of law sought to be invoked, casts the burden upon the appellant, and is misleading." The objection in a general way covers the objections here under consideration. It was held to be not well founded.

Counsel argue that in the Price case, there was no dispute as to the fact that plaintiff was injured in the collision; therefore, the omission to require that finding in the instruction there given was not reversible error, and the omission is fatal here, because the question whether plaintiff was injured as a result of the collision was in dispute throughout the case. The instruction includes the question whether plaintiff was a passenger, and whether there was a collision. The fact then, that the instruction does not expressly require a finding that plaintiff was injured as a result of the collision, with the assertion that it was not conceded that plaintiff suffered injuries from the collision, constitutes the basis of the distinction sought to be made between this case and

the Price case in respect to the correctness of the instruction. We are of the opinion that the instruction here, in and of itself, is not misleading. It is advisory, and it does not undertake to direct a verdict. By the first sentence of the instruction the jury were told that if plaintiff was a passenger it was the duty of the defendants to use the highest degree of care to carry her safely, and failure, if there was a failure to use such highest degree of care, would constitute negligence on the part of defendants and they would be responsible for injuries resulting to plaintiff, if any, from such negligence, if any. The jury would understand that the failure referred to involved failure to carry the plaintiff safely. The second sentence of the instruction advised the jury that if they found, under the evidence, there was a collision between the two cars, on one of which plaintiff was a passenger, the presumption was the collision was occasioned by some negligence of the defendants.

The whole of the instruction is to be considered. The word ''negligence'' as so used, is to be taken in the sense of lack of care to carry plaintiff safely. It was used here on the hypothesis that there was a collision of cars carrying passengers—and as so used, had reference to that lack of care which caused or permitted the collision under the circumstances. The permitting or causing of one street car to run violently against the rear end of another carrying passengers, and putting such passengers in peril, is negligence. It is actionable negligence only as to the passenger who sustains an injury by reason of such collision.

Defendants, by their Instruction 3, went far toward adoption of the theory of negligence of which they complain, and which they say is embodied in plaintiff's Instruction 1. Defendants' Instruction 3 told the jury that in determining the facts of the case they were ''to first decide upon the question as to whether under all the facts and circumstances, there is or is not any negligence upon the part of defendants' agent, or agents, servants and employees, as defined to you by other instruction.'' The other instruction defining negligence is plaintiff's Instruction 1; and defendants' Instruction 3, going further, told the jury that until the question of negligence had been determined by them, ''they had no right to take into consideration the nature, character or extent of the alleged injuries to plaintiff.''

The complaint that plaintiff's Instruction 1 authorizes the presumption that defendants were negligent without first requiring proof that plaintiff was injured, is to be considered in connection with certain instructions given for defendants. Defendants' Instruction 7, is as follows: ''The court instructs the jury that an accident may happen and a person be injured therein, that is not caused by the negligence of any person connected therewith, and if the jury believe from the evidence that the *injury of plaintiff* was the result of

such mere accident or misadventure, then your verdict must be for defendants.'' It then defined the word, accident. The words, ''such mere accident or misadventure'' necessarily referred to the collision and its result to plaintiff. The question presented by the instruction was not whether plaintiff had an injury, but whether her injury was the result of such mere accident or misadventure. The instruction as worded assumed her injury as a fact. Defendants' Instruction 9, in the first sentence, defined ''an unusual occurrence,'' of a character such as is to be considered an accident. It then continued: ''If the plaintiff *received her injuries* as a result of some occurrence which careful and prudent men in the situation of defendants' agents, would not reasonably have anticipated or expected, then such occurrence is what in law is termed an accident, and the defendants are not liable for the *resulting injury to plaintiff.*'' Definition of accident was again given. Again, the defendants assumed that plaintiff received injuries. The question put by the instruction is not whether she received injuries, but whether *her injuries,* the injuries she has, were the result of an occurrence which defendants' agents would not reasonably have anticipated.

Defendants' Instruction 11 is as follows: ''The court instructs the jury that the defendants in this case are not required to prove what caused the car on which plaintiff was located to collide with another, and even though you cannot find from the evidence the exact cause, or if such cause is unknown and has not been shown, still if after all the testimony in the case, not only that offered by the plaintiff, but that offered by the defendants, you find that there was no negligence on the part of the defendants' servants of the character submitted to you for your consideration, then the defendants must have the verdict, even though plaintiff was their passenger and received her injuries without any fault on her part.'' This instruction of defendants assumed that plaintiff was a passenger on the car which collided with the other car (a reversal of the alleged movement) and submits the hypothesis that the cause of the collision was not shown, or was unknown, and no negligence of defendants was shown ''of the character submitted.'' Upon that, it tells the jury defendants must have the verdict, ''even though (granting or notwithstanding that) plaintiff was their passenger and received her injuries without any fault on her part.'' These instructions taken together supplied the elements said now to be wanting in plaintiff's instruction.

Having procured the giving of the instructions assuming the fact of injury, that fact, or element, was present in the submission of the case to the jury. The question whether plaintiff was a passenger and while such the collision occurred, was submitted by plaintiff's Instruction 1. Those facts were assumed in defendants' Instruction

11. The last-mentioned instruction expressly "located" her as a passenger on the car subjected to collision. The other instructions for defendant to which we have referred, assumed the fact of plaintiff's injury. Out of these things the presumption arose that her injuries were the result of negligence on the part of defendants, and the burden was cast upon them to overcome that presumption. By these instructions defendants submitted their defense not on the ground that plaintiff suffered no injury, but, upon the ground that the injury she received was the result of accident, or misadventure, or an unusual occurrence not to be foreseen, and not due to negligence on their part. They submitted the same theory of defense by their Instruction 8, but, in that instruction withheld assumption of injury to plaintiff.

Defendants cannot now take out of the case what they put into it upon its submission to the jury. The theory on appeal does not conform to the theory on submission as shown by instructions 7, 9 and 11. "This court, in the disposition of causes upon appeal, should determine them upon the theory presented in the trial court; litigants should not, and will not be permitted to contest a proceeding upon one theory and then, when it reaches this court, shift its position by demanding the formal proof of facts, which were practically admitted in the court below. [Meyer Bros. Drug Co. v. Bybee, 179 Mo. 1. c. 369, citing Farrar v. Railroad, 162 Mo. 469; Goodman v. Crowley, 161 Mo. 657.] See also Chinn v. Naylor, 182 Mo. 583, 594; Deschner v. Railroad, 200 Mo. 332; Walker v. Railroad, 193 Mo. 453, 483.

Defendants cannot now be relieved of that which the law places upon them under the state of facts assumed in their instructions. Upon the ground stated, we hold that plaintiff's instruction cannot be held to be reversible error on the theory that it improperly and prematurely shifted the burden upon defendants, or allowed the jury to presume injuries, or put upon defendants the burden of disproving injuries.

Some other objections are made to plaintiff's Instruction 1. It is insisted that it is fatally defective "as not requiring the jury to find that the accident and collision complained of were the proximate cause of any disability from which the plaintiff might be suffering," and also "as purporting to cover the entire case by omitting elements essential to plaintiff's recovery." It must be observed that the instruction is not one which purports to cover the entire case, and coerce a verdict, but is advisory only.

It was necessary to a verdict for plaintiff that it be found she suffered injuries as the proximate result of the collision. No instruction directing a verdict for plaintiff was asked or given. Instruction

1, and Instruction 2 which was upon the measure of damages, were the only instructions given for the plaintiff. Under the conclusion we have reached and heretofore announced as to the effect of defendants' Instructions 7, 9 and 11, any asserted deficiency in plaintiff's Instruction 1 as to the cause of her injury was supplied by defendants' own instructions, and a verdict for plaintiff would follow, if the jury believed the injuries were not the result of an accident, as submitted by defendants.

It is complained that the instruction is erroneous as discussing abstract propositions of law, and giving undue prominence to plaintiff's injuries without requiring the jury to find that they were proximately caused by the collision, and it is suggested that it dwells upon and gives undue prominence to such injuries and disabilities. It is not subject to that criticism. The proposition of law is concrete in its application to the plaintiff's case: the instructions for defendants point out the collision as the cause of the plaintiff's injuries; those injuries are assumed as a fact, and the collision is submitted as an accident or misadventure, for the result of which defendants are not liable. In view of defendants' own instructions they cannot well complain that plaintiff's instruction gave undue prominence to plaintiff's injuries. The objections are overruled.

II. Plaintiff's Instruction 2 is as follows:

"If under the evidence and instructions of the court the verdict is in favor of the plaintiff, it then becomes your duty to assess damages in favor of the plaintiff and against the defendants in such an amount as will reasonably compensate plaintiff for injuries, if any, she has received, and in arriving at your verdict you may take into consideration the nature, character, and extent of her injuries, if any, and her disability. if any, and the pain of body and mind, if any, which plaintiff has suffered as a result of said injuries, if any, and the pain of body and mind and disability, if any, which plaintiff is reasonably certain to suffer in the future as a direct result of the injuries, if any.

"In no event should your verdict, if any, to plaintiff, exceed the sum of twenty thousand dollars, the amount claimed in plaintiff's petition. In naming this amount the court does not mean to direct you to find for the plaintiff in this sum, or any sum, but merely mentions the sum mentioned in plaintiff's petition."

The complaint is that this instruction "is improperly related to and inoculated by, the errors of plaintiff's Instruction 1," and also that it fails to require the jury to find that defendants' negligence, if any, was the proximate cause of plaintiff's injury or disability

before assessing damages against defendants. It is argued that the absence of this essential element from Instruction 1, made it vital that such finding should be required by Instruction 2. Counsel for defendants, under this contention, rely upon the cases cited under their assignments against Instruction 1, many of which cases have been heretofore mentioned. What we have said concerning Instruction 1 and the effect of the assumption in defendants' instruction, disposes of the contentions here made against Instruction 2. As we have heretofore shown, defendants' Instruction 3 told the jury that they should first determine the question of negligence, and should not consider the nature and extent of plaintiff's injuries until they had first determined the question of negligence. The effect of the other instructions given for defendants was to submit to the jury the question whether plaintiff's injuries were due to the negligence of defendants, or, were due to an accident or misadventure, for which defendants are not responsible. This contention of defendants is overruled.

III. There is assigned the refusal to give defendants' Instruction 4. This instruction is as follows:

"The court instructs the jury that the burden of proof is on the plaintiff to prove to your satisfaction by the preponderance or greater weight of the credible testimony, that the defendants were guilty of negligence as submitted to you in these instructions, and this burden of proof continues and abides with plaintiff throughout the entire trial, and unless you believe and find from the evidence in the case that the plaintiff has proven by a preponderance of the credible testimony to your reasonable satisfaction that the defendants were guilty of negligence, as defined in these instructions, and that such negligence was the direct cause of the injuries complained of, then your verdict must be for the defendants."

It is in the exact terms of the instruction given and condemned in Price v. Metropolitan Street Railway, 220 Mo. 435, and set out in full at page 463 of the report of that case. It was there said: "Such an instruction has no place in a case where the doctrine of *res ipsa loquitur* is applicable. It destroys every vestige of the doctrine of presumptive negligence." An instruction in similar form is discussed in Porter v. St. Joseph Ry. L. H. & P. Co., 277 S. W. 913. Of the instruction there given it was said, l. c. 915: "If the instruction had been limited so as to have told the jury that the burden was upon the plaintiff to prove by a preponderance of the evidence that she was a passenger upon defendant's car, and while she was riding therein it collided with a fire truck, and as a result of said collision

she was injured, and that this burden remained with her throughout the trial, it would not have been error, because it would have shown the extent of the burden cast upon her and have likewise shown the burden cast upon the defendant to enable it to overcome the prima-facie case. [Simpson v. Ry. Co. (Mo.), 192 S. W. 743; Loftus v. Met. Street Ry., 220 Mo. 470, 119 S. W. 942; Stauffer v. Railroad, 243 Mo. l. c. 317, 147 S. W. 1032.]'' In the case at bar the instructions given at the instance of defendants supplied the elements out of which arose the presumption of negligence on their part.

IV. Defendants' Instruction 10, which was refused, is as follows: ''The court instructs the jury that the defendants are not obliged to foresee and provide against those casualties which have not been known to occur before and which may not reasonably be expected; and if the defendants have availed themselves of the best known and most extensively used safeguards against danger, they have done all the law requires, and their liability is not to be ascertained by what appears for the first time, after the disaster, to be a proper precaution against its occurrence.

''And where an appliance, machine or structure, not obviously defective or insufficient, has been in daily use for a long time, and has uniformly proven adequate, safe and sufficient, it may be continued without imputation of negligence.''

There was no evidence concerning the appliances appurtenant to the street car, other than that which we have set out in the testimony of the motorman concerning the brakes. There was no evidence as to whether defendants had availed themselves of the best known and most extensively used safeguards against danger. The instruction submitted an issue upon which there was no evidence, and its refusal was not error. [Quinn v. Van Raalte, 276 Mo. 71; Baker v. McMurray Contracting Co., 282 Mo. 685.]

V. Finally, it is insisted that the verdict is excessive. The plaintiff testified that she was forty-four years old at the time of the trial, in November, 1925. She had been employed for about two years and a half in a millinery store prior to and up to the time of her injury. Her testimony was that during that period and prior to her injury she was in good health. Her employer testified to the same thing—that plaintiff was active and efficient in her work, which required her to be upon her feet and active from nine o'clock in the morning until 5:30 in the evening. Their testimony was that plaintiff began this work at a wage of $75 per month, was later advanced to $85 per month, and after that, and for

a considerable period before her injuries, received $100 per month. Several witnesses, including plaintiff's employer, none of whom was related to plaintiff, testified to the plaintiff's state of good health and active work in her employment right up to the time of her injury. Her testimony was that she had not been away from her home more than eight or ten times since she was injured; that she "suffers much pain all of the time and cannot walk a block without stopping or resting without the help of some one, and the use of a cane." Plaintiff, in her cross-examination testified that about twelve or fourteen years prior to the trial, an operation was performed upon her for the removal of the appendix and also the ovaries and fallopian tubes, but that she recovered her strength and health from that operation. The testimony for plaintiff was that the adhesions formed from that operation were torn in the subsequent injury.

Defendants called Dr. Wm. C. Iuen, the physician regularly in their employment for many years, who testified that he examined the plaintiff after suit was brought. His testimony in effect, was, that plaintiff was neurasthenic, and he gave it as his opinion that such condition was due to the operation mentioned as suffered twelve or fourteen years before. He also expressed the opinion that plaintiff could walk, or might have walked better, under instructions to use the left limb. This physician testified that the pelvis could be tilted by the manner of standing, and that he detected nothing wrong with the plaintiff's hips and pelvis. He was asked if he did not tell plaintiff at the time he examined her that she had a strain and a sprain, which he observed, and tell her it was stubborn to treat. He answered that he had no recollection of anything of the kind. Plaintiff, called in rebuttal, testified that the witness, Dr. Iuen, did say to her that she had such a sprain, and it was difficult to treat. An X-ray picture taken by Dr. Lockwood, two days before the trial, of the bones of the plaintiff's hips and pelvis, was introduced in evidence. Dr. Lockwood testified that the picture included "the three lower lumbar vertebrae; all the bones of the pelvis, both hip joints, and the upper portion of each femur." He said of it: "Our findings are those of a tilting of the pelvis," and expressed his opinion that the "condition could be caused by an atrophy as a result of an injury." Dr. Dorsey testified that he was present when Dr. Lockwood took the X-ray picture; that he had examined it, and that it confirmed the finding he had made at the time the plaintiff was taken to the hospital. He was of the opinion that the condition was permanent.

Counsel for defendants have cited many cases under their contention that the verdict is excessive. A great number of them are cases decided by courts of appeals. Counsel for plaintiff have cited al-

most an equal number. The cases involved persons of various ages, and earning power, and condition of disability. A review of them would require an undue amount of space and even then no exact standard could be established.

The plaintiff's age and her earning power at the time she was injured are to be considered. At that time she was receiving $100 per month in her employment. Under this evidence she had lost in wages more than $1500 at the time of the trial. If the injury received permanently disables her from earning anything of consequence in the future, the verdict is not excessive. The members of the jury saw the plaintiff, and heard the testimony as to her condition before her injury, and the testimony, as to her condition afterward and the reasonable probability of its permanency. A consideration of the evidence and of the cases cited has not convinced us that we are justified in saying that the verdict is excessive, and the judgment is therefore affirmed. *Seddon, C.,* concurs; *Ellison, C.,* absent.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.