STELLA JONES, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, APPELLANT.—155 S. W. (2d) 775.

Kansas City Court of Appeals.   October 6, 1941.

*M. J. Henderson, Thos. E. Deacy, M. J. Henderson, Jr.* and *Ben W. Swofford* for respondent.

*Chas. L. Carr, Herbert C. Hoffman* and *Hogsett, Trippe, Depping & Houts* for appellant.

CAVE, J.—This is an appeal by the defendant from a judgment for $5833.33, obtained by plaintiff against it for personal injuries alleged to have been sustained by her while a passenger on one of defendant's street cars being operated by its agents and employees in Kansas City. For convenience, the parties will be referred to as they were in the trial court, plaintiff and defendant.

Plaintiff's second amended petition, upon which the case was tried, after alleging certain preliminary facts and matters, further alleged:

"Plaintiff further states that at said time and place said street car in which she was a passenger was so carelessly and negligently operated, controlled and maintained by the defendants, its agents, servants and employees as to cause the same to lurch and jerk violently and suddenly, and in an unusual and violent manner, thus and thereby causing the plaintiff to be thrown violently and forcibly against the seats attached to said car and onto the floor thereof, seriously and permanently injuring this plaintiff as hereinafter set out; that at all times herein mentioned this plaintiff was a passenger

for hire upon said street car, and was at all times exercising due care and caution for her own safety.''

The answer was a general denial. It is conceded by the defendant that the petition declared on general negligence, and therefore, so far as the petition is concerned, an instruction on the res ipsa loquitur theory would be authorized. However, defendant asserts that plaintiff's evidence, and the only evidence in the case concerning the cause and manner of the accident, proved the specific negligence on the part of the defendant which caused plaintiff's injuries, and therefore, the specific negligence should be submitted to the jury, even though the petition charged only general negligence. That is true, if the evidence clearly shows the specific negligence which caused the accident. [Berry v. Kansas City Public Service Co., 121 S. W. (2d) 825, and cases there cited.]

It is also defendant's contention that the plaintiff, by the first paragraph of her Instruction No. 1, did submit the case on specific negligence, and by the second paragraph of said instruction, ''erroneously proceeded upon the res ipsa loquitur doctrine and erroneously authorized the jury to infer and find that defendant was negligent upon the res ipsa loquitur theory.'' Such contentions will require an examination of the evidence concerning the cause of the accident, and plaintiff's Instruction No. 1.

The evidence concerning the cause of plaintiff's alleged injury is as follows:

The plaintiff testified that she boarded one of defendant's street cars to go to her work, and after paying her fare, took one of the longitudinal seats near the front of the car, and rode in that position for some distance. Near Troost Avenue and 31st Street, the car stopped to let off two passengers who had been occupying a cross seat, and as these two passengers started down toward the motorman, preparatory to leaving the car, the plaintiff left her seat at the front and started towards the back of the car to take the seat so vacated. At that time, the car was stopped and the front door was open to discharge the two passengers and the motorman was facing in the general direction of the open door. As she went along the aisle to take this vacant seat, she says the motorman looked back towards the back of the car and that when the two passengers and gotten off ''he turned around and threw the car in motion. . . . The car gave a sudden jerk and threw me into a whirl, into this lady's lap.'' When asked to further describe the movements of the car, the plaintiff said: ''It was a lunge. It wasn't an ordinary jerk. It simply was a lunge.'' The lady into whose lap she had fallen assisted her to her feet and the car gave another ''sudden jerk'' and she ''stumbled into the seat where I had intended to go.'' She also said ''It happened so quick and so sudden I didn't know what happened. . . . I don't know whether it went forward or backwards, but I do know

the car gave a lunge.'' She said she had ridden on street cars many times and was familiar with the ordinary jerk or motion of a street car in starting, and that this car did not start in an ordinary and usual manner.

Mrs. Rooney, who was a passenger on the car and a witness for plaintiff, described the movements of the car as follows:

''Well, it had just started with a jerk, I don't know, just a lunge, because it pushed me forward and then pushed me back. It just seemed to jerk me myself and then when I felt her hit me, I grabbed her. . . . When the car started, it started with a jerk or lunge. I don't know what you call it.''

Mrs. Huff, also a passenger on the car and a witness for plaintiff, testified:

''Well, while she was walking to her seat, before she got to the seat, the street car gave a lunge, and Mrs. Jones grabbed for a seat and as she did, it twisted her around. . . . Well, it was sudden, a sudden lunge. It just jerked people back in their seats. . . It jerked me back in my seat. . . . It lunged forward. It more than jerked.''

Mrs. Mitchell, a passenger on the car, and a witness for plaintiff, described the movements of the car as follows:

''Well, the street car jerked it in such way that it knocked my knee against the back of the seat in front of me and it knocked my purse and my book off my lap into the aisle and that is when I noticed Stella then.''

There was no evidence offered by the defendant concerning the cause of the accident, because the matter was not reported to the motorman or any one representing the company at that time, and it had no record or information of such an accident. The various motormen who were operating the street cars over the particular streets involved at about the time of this alleged accident, were produced in court and the plaintiff admitted that such motormen would testify that no complaint was made to any of them concerning this matter and that nothing unusual or out of the ordinary occurred on any of their cars that morning.

The burden of defendant's argument is that ''Plaintiff's evidence, and the only evidence in the case, tended to show both the person responsible for and the specific cause of plaintiff's alleged injuries,'' and therefore, the cause should have been submitted to the jury on the specific negligence proven, and was so submitted by the first paragraph of plaintiff's Instruction No. 1.

We do not agree that the evidence clearly shows the *specific negligence* which caused plaintiff's injuries. There is nothing in the record to show why or what caused the car to start with such unusual and extraordinary movements. The starting of the car in an ordinary and normal manner while a passenger is in the aisle is not

necessarily negligent, it is the usual and extraordinary jerk or lurch or lunge that is the gravamen of this neglect, if any, and the record is silent as to what caused the car to start with an unusual and violent jerk or lunge. The plaintiff had no control over the movements of the car or the mechanism which caused it to move. The defendant had exclusive control over the management and operation of the car and its various parts which would set it in motion. In the case of McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, the Supreme Court defined the elements necessary for a *res ipsa loquitur* case in the following language: (l. c. 559.)

"In general and on principle the doctrine *res ipsa loquitur* does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence."

Now, applying these principles to the evidence in the case at bar, it is clear that the "occurrence" was such that "does not ordinarily happen if those in charge use due care," that is, the starting of the car with violent and unusual movements; and certainly, the instrumentalities involved were under the management and control of the defendant, and it possessed superior knowledge or means of information as to the cause of this unusual occurrence. We think the conclusions we have reached concerning the effect of the evidence in this case as to whether it is specific negligence or is a case within the *res ipsa loquitur* doctrine are supported by the cases of Dougherty v. The Missouri R. R. Co., 81 Mo. 325; Thompson v. Kansas City Public Service Co., 114 S. W. (2d) 145; Price v. Metropolitan Street Ry. Co., 220 Mo. 435; and Fowlkes v. Fleming, 322 Mo. 718, 17 S. W. (2d) 511. Our courts have also held that even though there may be some evidence of specific negligence, nevertheless, if it does not *clearly* show what caused the accident, then the plaintiff is nevertheless entitled to submit the case on the *res ipsa loquitur* doctrine. [Price v. Metropolitan Street R. R. Co., *supra*; Porter v. St. Joseph Ry., etc., 311 Mo. 66; Kinchlow v. K. C., K. V., & W. R. R. Co., 264 S. W. 416.]

The defendant cites and relies upon certain cases to sustain its contention that the evidence proves specific negligence. The first case is Bartley v. Street Ry., 148 Mo. 124. The charge in the petition in that case was that "the gripman so carelessly and negligently operated said gripiron as to cause said car to jerk and lurch with such force that it broke the plaintiff's hold and threw him on the pavement." The Supreme Court held that was a charge of specific negligence. But it will be observed that a specific person, "the gripman," had carelessly and negligently operated a certain part of the mechanism of the street car, to-wit: "the gripiron," and that was what caused the car to jerk and lurch. We do not have any such

charge in this petition and the evidence does not show what the motorman did to cause the car to jerk and lunge.

In the case of Stolovey v. Fleming, 328 Mo. 623, 8 S. W. (2d) 832, the court was there dealing with a situation where the motorman started the car "while the plaintiff had one foot upon the step and trying to get thereon as a passenger." It was held that such an allegation was a charge of specific negligence and, we think, correctly so, because the starting of the car under such circumstances would be negligence whether it started in the normal way or with an unusual lurch and jerk.

In the case of Lammert v. Wells, 321 Mo. 952, 13 S. W. (2d) 547, the court was dealing with a situation where a passenger was in the act of alighting from a street car when it was started. We think that is an entirely different situation from the question here under consideration.

The case of Duggan v. St. Louis Public Service Co., 56 S. W. (2d) 626, is more nearly like the case at bar, but there the plaintiff was in the act of alighting from the car when it was caused to move with a jerk, lurch and jump, and, as alleged in that case, "without any warning to the passengers." The St. Louis Court of Appeals held that specific negligence was charged in that petition; however, the defendant in this case concedes in its brief that the petition in the instant case charges only general negligence, and it is our opinion that the evidence does not enlarge the allegation of the petition or clearly prove any specific negligence. As said before, when a passenger is in the act of alighting from a street car and therefore in a position of danger, it would be negligence to start the car, whether it be done in a normal or abnormal way.

The cases of Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21; Grimes v. Red Line Service, 337 Mo. 743, 85 S. W. (2d) 767, and Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S. W. (2d) 825, are cited by the defendant as authority for the proposition that even though plaintiff's petition charges general negligence or the *res ipsa loquitur* doctrine, nevertheless, plaintiff may not rely on the general negligence if the evidence shows the specific negligence that caused the accident. Those cases do announce that doctrine and that is the rule in Missouri, and in each of those cases the evidence did specifically show precisely what caused the accident. But those cases are not in point because we hold in this case that the evidence does not show what negligence caused the accident, or what caused the car to move with an unusual and abnormal jerk, lurch and lunge.

The defendant also calls to our attention the case of Hughes v. East St. Louis City Lines, 149 S. W. (2d) 440. We think an examination of the petition and evidence in that case will demonstrate it is no authority for the point now under consideration. There, plain-

tiff was a passenger on a motorbus which was traveling along a certain street at a speed of some twenty-five to thirty miles per hour and the operator "made a sharp turn . . . in a sudden, violent and unusual manner." The St. Louis Court of Appeals held that was specific negligence and we think correctly so. There was a charge in the petition and evidence of an affirmative act on the part of the motorman in the sudden turning, while in the case now under consideration, it was not alleged or proven what caused the car to start with a violent and unusual jerk or lurch.

The defendant also, in its reply brief, calls to our attention the cases of Axom v. Kansas City Public Service Company, 142 S. W. (2d) 342, and Liable v. Wells, 317 Mo. 141. An examination of the opinion in those cases will demonstrate that they are not decisive of the question now involved, since we hold that the evidence in this case does not clearly prove specific negligence.

The question now presents itself, does the first paragraph of plaintiff's Instruction No. 1 submit the case on the *res ipsa loquitur* doctrine, or on specific negligence?

The instruction, after requiring the jury to find the plaintiff became a passenger on defendant's street car, that the car had stopped to let off such passengers, and that while it was standing plaintiff had gotten up and walked back toward a vacant seat, then proceeds to submit the case as follows:

"And if you further find and believe from the evidence that the plaintiff took a seat at the front of the car as it proceeded in a westerly direction along and upon 31st Street and that thereafter the plaintiff arose while said street car was stopped and at a standstill to let off passengers, if so, and moved along the aisle of said street car for the purpose of taking another seat on said street car, if you so find; and if you further find and believe from the evidence that the defendant by and through its agents and servants in charge of operating said street car knew or should have known in the exercise of the highest degree of care, that the plaintiff was so moving along the aisle of the street car while it was stopped and at a standstill to let off passengers; and if you further find and believe from the evidence that the plaintiff was at all times exercising ordinary care and caution for her own safety; and if you further find and believe from the evidence that the defendant by and through its agents and servants in charge of and operating said street car caused the same to start with a sudden, violent and unusual jerk or lurch, if so, and that the sudden, violent and unusual jerk and lurch, if you so find, caused the plaintiff's body to be twisted and caused her to be thrown against the seats of said street car and against a passenger thereon, and injured, if you so find; and if you further find and believe that the starting with a sudden, violent and unusual jerk and lurch, if you so find, was negligent under all of the facts and circumstances

in evidence, then your verdict must be in favor of the plaintiff and against the defendant Kansas City Public Service Company.

''In this connection you are further instructed that if you find and believe from the evidence that the defendant by and through its agents and servants in charge of and operating the street car mentioned in evidence caused the same to be started with a sudden, violent and unusual jerk and lurch and that as a direct result thereof plaintiff was thrown against the seats of said street car and against a passenger thereon and her body was caused to be twisted and she was injured, if you so find, then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence upon which the jury may infer that the defendant was negligent, and you may so find, unless you find and believe from other evidence and from all the facts and circumstances in evidence that said sudden, violent and unusual jerk and lurch, if any, of said street car was not due to the negligence of the defendant.''

The first paragraph, after certain preliminaries, requires the jury to find that the plaintiff was a passenger on one of defendant's street cars, that she was moving along the aisle and that defendant's agent knew or should have known that she was so moving along the aisle, that she was exercising ordinary care for her own safety, that the defendant, through its agents and servants caused the car to start with a sudden, violent and unusual jerk or lurch and that such caused her to be thrown against a seat and another passenger, and that the starting with a sudden, violent and unusual jerk and lurch was negligent under all the facts and circumstances in evidence. Under the decision of this court in Axon v. Kansas City Public Service Company, 142 S. W. (2d) 342, the last requirement of finding that the starting of the car with a sudden, violent and unusual jerk and lurch was negligent is necessary, whether the case be one under *res ipsa loquitur* doctrine or under specific negligence. It will be noted that the instruction required a finding that the sudden, violent and unusual jerk and lurch was negligent, but it does not state any particular act of negligence which caused the car to start with a sudden lurch or lunge. Since we hold that the mere movement of the car with a violent lurch or lunge while the plaintiff was in the aisle does not constitute *proof* of *specific negligence,* it follows that a proper construction of the first paragraph of Instruction No. 1 is that it declares on general negligence, or the *res ipsa loquitur* theory, and not on specific negligence, and therefore, the first and second paragraphs of said instruction are not in conflict and do not submit the case on different theories.

However, the defendant argues that even if the whole instruction submits a case on the *res ipsa loquitur* doctrine, nevertheless the second paragraph is erroneous ''for the reason that it commented upon the evidence in advising the jury that it might 'infer' and 'find'

defendant negligent if it should find that the car was started with a jerk," and cites in support of that contention the cases of Kennedy v. Phillips, 319 Mo. 573, 5 S. W. (2d) 33, and McCloskey v. Koplar, 329 Mo. 527, 46 °S. W. (2d) 557. But in the case of Thompson v. Kansas City Public Service Company, 114 S. W. (2d) 145, this court, through Commissioner CAMPBELL, considered an instruction embodying almost the identical language which is contained in the second paragraph of this instruction, and reviewed the holding in the Kennedy and McCloskey cases, *supra,* together with more recent decisions, both of the Supreme Court and the Courts of Appeal in this State, and held that such language was proper. We will not lengthen this opinion by again reviewing the opinions of the various appellate courts discussing that point, but refer those who are interested to the Thompson case, *supra,* for a collection of such authorities. We adhere to the ruling in the Thompson case and rule this point against the defendant.

Defendant next complains of error in the court's refusing to give its Instruction K, which instruction is as follows:

"The court instructs the jury that the defendant was not an insurer of plaintiff's safety. You are further instructed that there are jolts and jerks to a street car that are usual and incident to its operation, and when a jerk or jolt or movement of a street car is usual and incident to its operation the defendant is not liable for any damage or injury caused by it. You are further instructed that a jolt or jerk of a street car that would be harmless when one was seated in a seat might cause injury to a passenger changing from one seat to another.

"You are further instructed that if you believe and find from the evidence that at the time of plaintiff's fall and injury she was moving from one seat to another in said street car and the alleged jerk or jolt of said street car which caused her to lose her balance, if any, was caused by the operator who was operating the street car, and if you further find that the operator of said street car did not know that plaintiff was moving from one seat to another, and if you further find that said jerk or jolt of said street car was not of sufficient force to harm or injure one seated in the seat of said street car, but was one that is usual and incident to the operation of a street car, then defendant was not liable for the said jolt, jerk or jar of said street car and the resultant injuries, if any, to plaintiff, and plaintiff cannot recover in this suit and your verdict shall be for the defendant."

The defendant says that this instruction "(a) would have advised the jury not only of the proper distinction between a jerk or jar incident to operation and not actionable, (b) but also of the distinction between the duty owed persons in seats and persons walking around in a street car without notice to the motorman." We think

defendant's instructions C and G, dispose of the first contention. Instruction C advised the jury "that if you believe and find from the evidence that plaintiff's fall and resultant injuries, if any, were caused by a jerk or jolt of the street car in question that was usual and ordinary, incident to the operation of a street car under like circumstances, the plaintiff is not entitled to a verdict in this case and the verdict shall be for the defendant." Instruction G advised the jury if they found and believed from the evidence "that plaintiff did not fall in defendant's street car from an unusual or extraordinary jerk or jolt of said street car, then your verdict will be for the defendant." We think these two instructions clearly presented the issues first above contended for by defendant.

As to the second contention, we think the instruction was so indefinite, uncertain, and such an abstract statement that the trial court should not be convicted of error in refusing it. Among other things, the instruction says: "You are further instructed that a jolt or jerk of a street car that would be harmless when one was seated in a seat might cause injury to a passenger changing from one seat to another." That seems to be a very abstract statement, and is certainly speculative. We don't believe it would give the jury any legal light on the questions to be decided by it. The balance of the instruction is again dealing with the question of whether this particular street car started with such a jerk or jolt as is usual and incident to its operation, and as we have said, defendant's Instructions C and G properly and fully submit that issue to the jury. We don't believe the court erred in refusing Instruction K.

Defendant's last contention is that the verdict for $5833.33 is excessive.

Much of the evidence in the record concerns plaintiff's alleged injuries and the condition of her health prior to the date of the accident. It would make this opinion entirely too long to state such evidence in detail, but there is evidence to support the contention that, generally speaking, prior to the accident plaintiff was in reasonably good health and had been able to do all of her house work, take care of an invalid husband, run a restaurant for two or three years, work in a laundry, and had been working at the WPA Sewing Room, and was physically able to do such work. It is true she had had an abdominal operation in June prior to the accident, but she and some of her neighbors and acquaintances testified that she had recovered from that and returned to work the first part of October. At the time of the accident she suffered severe pains in the back and the back of her head, and was nauseated and from that date was not able to continue with her work. Dr. Hogan was called in by WPA officers to examine and treat her and found that she had a sacro-iliac sprain, muscle spasms in the lower part of the back, severe pains in the abdomen, and was exceedingly nervous. She was confined in St. Mary's Hos-

pital in Kansas City from November 11th until the following January 31st. During that time her back was taped to immobilize it, and she was given heat treatments and medicine to quiet her. She returned to her home and during the next two or three months was confined to her bed much of the time. In April she was sent by the WPA office to the Marine Hospital near St. Louis for treatment and observation. She remained in that hospital for some four or five weeks. Her doctors had prescribed a canvas support with steel stays to be tightly drawn about her lower back and hips as a support, this being the acknowledged treatment for sacro-iliac sprains. She continued to wear that and was wearing it at the date of the trial, some eighteen months after the accident. All of the medical evidence indicated that she was very nervous and of the neurotic type, but none knew what her condition had been prior to the accident; and that neurosis was a difficult condition to treat. A number of her friends and acquaintances testified concerning her healthy appearance and cheerful disposition prior to the accident, and how she had changed in physical appearance and disposition after the accident. The evidence is conflicting as to whether all of her complaints and her present physical condition is entirely due to the accident or to other physical diseases, but we should not undertake to pass on the weight of such evidence. The jury assessed the damages, and the trial court, who saw the witnesses and heard the testimony, permitted the amount of the verdict to stand.

On the question of excessive verdicts; the Supreme Court announced the general rule to be followed in the case of Peterson v. Kansas City, 324 Mo. 454, 23 S. W. (2d) 1045, as follows:

"The question of excessiveness of the verdict must be considered from somewhat the same angle as a demurrer to the evidence—all of the evidence tending to support the verdict must be taken as true."

This rule was affirmed by the Supreme Court in the case of Webb v. M. K. & T. R. R. Co., 116 S. W. (2d) 27. For other cases where the appellate courts have permitted larger verdicts than the instant one to stand, where the injuries were somewhat comparable to the injuries here, see Gately v. St. Louis-San Francisco Ry. Co., 332 Mo. 1; Plater v. Kansas City, 334 Mo. 842, 68 S. W. (2d) 800; Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654; and Carpenter v. Wabash R. R. Co., 335 Mo. 130, 71 S. W. (2d) 1071. The defendant calls to our attention the case of Taylor v. Terminal Railroad Association, of St. Louis, 112 S. W. (2d) 945, but in that case it appears that plaintiff's physician said frankly that plaintiff's injuries were not permanent, while in this case plaintiff's doctors stated her condition was permanent. There is also much more evidence of other injuries and pain and suffering in this case than in the Taylor case. No doubt the trial court gave serious consideration to the question of excessiveness of the verdict, and declined to interfere,

and while we are not bound by the refusal of the trial court to order a *remittitur*, we should and will defer to his sound discretion, unless it clearly appears from the evidence that to allow the verdict to stand would work a palpable injustice to the defendant. We conclude that the trial court did not abuse its discretion in this matter.

Finding no error in the record, the judgment must be affirmed. It is so ordered. All concur.