## GUSSIE M. LACKEY v. MISSOURI & KANSAS INTERURBAN RAILWAY COMPANY, Appellant.

### Division One, August 27, 1924.

1. **NEGLIGENCE: Passenger Alighting from Car: Contradictory Evidence: Question for Jury.** The platform of the interurban car was three feet and four inches above the street level to which passengers descended. The steps were steep. The car stopped at the usual place, and the conductor was urging the passengers to hurry, and was actively assisting the ladies. When plaintiff reached the top of the platform steps he took her by the arm and then looked back into the car. He held to her arm until she started down the steps and then released her and turned around, apparently to help the next passenger, and in doing so bumped against her shoulder just as she had raised her left foot off of the platform floor and was in the act of stepping down. This bumping or contact threw her off balance, and her left foot missed the step, and she fell or was thrown to the street and was badly injured. *Held*, that, though there was other evidence tending strongly to weaken or contradict these facts, they were sufficient to take the case to the jury, and to support a verdict finding defendant company liable for her injuries.

Lackey v. Interurban Railway Co.

2. ———: ———: **High Degree of Care.** A passenger is a passenger until he has alighted from the railway vehicle, and a carrier owes a passenger who is attempting to alight the very high degree of care imposed by law with respect to passengers.

3. ———: **Duty to Assist Passenger to Alight.** Whether the carrier owed a passenger a legal duty to assist her to alight from the railway car is an unimportant question where the conductor actively undertook to aid her. The law is that in making such effort it was his duty to use due care, and the carrier is responsible if the passenger was injured by reason of his failure to do so.

4. ———: **Bumping Against Passenger: Accident.** If the conductor of an interurban railway negligently bumps against a passenger just as she is in the act of stepping from the floor of the car's platform to the steep steps, and thereby precipitates her fall or causes her to fall down the steps, the carrier is liable for her consequent injuries. If the evidence justifies a finding that the conductor knew or ought to have known that the passenger was at the edge of the platform floor, that she was just starting to step off of the floor down to the first step below, and that in this position of obviously unstable equilibrium she would very easily be overbalanced; that with this knowledge and while she was in this position, he gave her a hard bump or push, from the effects of which she had no chance to protect herself, and did so as the result of his own hurried movement in turning to speed up, for the carrier's benefit, the next passenger whose turn it would be to alight, and as a result she fell down the steps, and no other person was in any way, directly or indirectly, responsible for the bump or push given her, the carrier is liable for injuries caused by her fall. In view of such facts, the defense of unavoidable accident is not applicable.

5. ———: **Evidence: Photograph of Injured Foot.** Plaintiff's testimony that a photograph was a picture of her injured foot, and that she recognized it as a picture of her foot, and recognized the surroundings and background as those present when the photograph was taken, identifies the photograph as a picture of her foot, and it is not error to admit the photograph in evidence.

6. ———: **Excessive Verdict: Injury to Foot.** Plaintiff at the time of her injuries was twenty years of age, unmarried, lived with her parents on a farm, helped with the household work and engaged in dressmaking; her health was good and she had had no previous trouble with her foot or leg. After she fell from the interurban car, one of defendant's surgeons gave her some liniment on the theory that the ankle of her left foot was sprained, but for some. days she suffered considerable pain and was confined to her bed about two weeks; the ankle got worse; she was unable to sleep; examinations by other physicians resulted in their telling her that

they could do nothing for her. The ankle bone is split or broken; the tendons are torn loose; the bones rotate outward, and this has a decided effect upon the use of the foot; it is badly deformed; the foot and toes drop over, causing a bulging at the instep; one physician testified that she is very nervous, "and any little excitement shakes her all to pieces"; another, that there is a chronic dislocation of the ankle, the ankle bone is turned forward, and the ligaments holding the bone in position are ruptured, and those holding the bones of the leg to the ankle bone are torn; and that the injury will cripple her walking as long as she lives. The trial occurred five and a half years after the injury, and she testified that she could not use her left foot to run her sewing machines; that it still pained her when she walked; that she could walk several blocks by resting occasionally. The left foot and leg have shrunk some, and there was evidence that the condition is incurable and would probably grow worse rather than better; also evidence tending to show less serious effects and some probability that an operation might help the foot. *Held*, that a verdict for ten thousand dollars is too large, and the judgment is affirmed upon condition that she remit twenty-five hundred dollars of it.

Headnotes 1 to 4: Carriers: 1, 10 C. J. sec. 1452; 2, 10 C. J. secs. 1048, 1348; 3 and 4, 10 C. J. sec. 1352; Headnote 5; Evidence, 22 C. J. sec. 1124. Headnote 6: Damages, 17 C. J. sec. 445.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

AFFIRMED (*upon condition*).

*Bowersock & Fizzell* for appellant.

(1) The evidence did not show any negligent act on the part of defendant. Lee v. Jones, 181 Mo. 291; Davis v. Railroad, 155 Mo. App. 312; Removich v. Construction Co., 264 Mo. 43; Deskins v. Railroad, 151 Mo. App. 432. (2) The verdict is so excessive as to indicate passion and prejudice on the part of the jury. Markey v. Railroad, 185 Mo. 348; Stolze v. Transit Co., 188 Mo. 581; Newcomb v. Railroad, 182 Mo. 687; Farrar v. Railroad, 249 Mo. 210; Kinney v. Met. St. Ry. Co., 261 Mo. 97; Dominick v. Coal & Mining Co., 255 Mo. 463; Lessenden v. Railroad, 238 Mo. 247.

*Burns & Watts* for respondent.

(1) The court did not err in refusing defendant's demurrer. International Ry. Co. v. Huggen, 45 Tex. Civ. App. 326; Lynch v. Mo. Pac., 92 Kan. 735; Hanlon v. Railroad, 187 N. Y. 73, 10 L. R. A. (N. S.) 411; Younglove v. Pullman Co., 207 Fed. 797; Steube v. Iron & Foundry Co., 85 Mo. App. 640; Mauerman v. Siemerts, 71 Mo. 101; Young v. Mo. Pac., 93 Mo. App. 267; Fillingham. v. Transit Co., 102 Mo. App. 573; Mackin v. People's Ry. Co., 45 Mo. App. 82; Maginnis v. Mo. Pac., 268 Mo. 667; Roper v. Greenspon, 272 Mo. 288; Kennish v. Safford, 193 Mo. App. 362. (2) The verdict is not so excessive as as to indicate passion and prejudice on the part of the jury. Hurst v. Railway, 280 Mo. 566; Miller v. Harpster, 273 Mo. 605.

JAMES T. BLAIR, P. J.—Respondent instituted this action to recover damages for injuries she alleges she received in consequence of a fall from the platform of one of appellant's cars. There was judgment for $10,000, and this appeal followed. Appellant contends (1) there was no evidence of negligence; (2) the court erred in admitting in evidence a photograph of respondent's foot; and (3) damages allowed are excessive.

Appellant operates an interurban line between Kansas City, Missouri, and Olathe, Kansas. Respondent became a passenger upon one of its cars. Her destination was Olathe. She was accompanied by her father. There were about thirty other passengers. The platform of the car was three feet and four inches above the street level to which passengers descended at Olathe. The car steps which led down were quite steep and are described as resembling a step-ladder. The evidence tends to show that upon the arrival of the car at Olathe it stopped at the usual place, and the conductor for reasons he stated, respecting certain special cars, was urging the passengers to hurry; that respondent's

father descended ahead of her, and then another passenger followed him; the conductor was actively assisting the ladies, and when respondent reached the top of the platform steps he took her by the arm and then looked back into the car; he held to her arm until she started down the steps and then released her and "turned around apparently to help the next passenger" and in doing so he "bumped" against respondent's shoulder just as she had raised her left foot off the platform floor and was stepping down; that this contact threw respondent off balance and her left foot missed the step and she fell or was thrown to the street. An additional abstract shows respondent testified: "Where did the conductor bump you? A. Right back, right on the shoulder, that is, I suppose his elbow, I don't know, but it was a very hard bump. Q. And that had the effect to cause you to step over the steps? A. Yes, sir. Q. Was there any one between you and the conductor when you fell? A. No, sir; the conductor was nearest to me." She testified the push on her back unbalanced her and caused her to fall; that when he touched her on the shoulder she stepped forward and lost her balance and stepped over all the steps and fell on the pavement. Respondent's father testified, in substance, that at the time his daughter fell he was standing on the pavement beside the car steps; that the conductor was "hurrying the passengers up as they came out of the car;" that the conductor took hold of respondent's arm to help her down and respondent was "at the top of the step and had hold of the handrail;" that just as respondent "raised her left foot to step out" the conductor released her arm and turned to help and reached for the lady behind her and "he bumped into" respondent with his elbow and overbalanced her and she fell down the steps. The evidence tends strongly to show respondent was seriously injured. The facts respecting this appear in another connection. There is other evidence tending to weaken this testimony or contradict it, but, under

the applicable rule (Buesching v. Gas Light Co., 73 Mo. 219), it is not for consideration on the question of the sufficiency of the evidence to take the case to the jury.

I. Appellant contends there is no evidence which will support a finding of negligence. A passenger is a passenger until he has alighted from the carrier's vehicle, and the carrier owes a passenger who is attempting to alight the usual duty of a very high degree of care imposed by law with respect to passengers.

*Care Due Passenger.*

[O'Brien v. Transit Co., 185 Mo. l. c. 268; Craig v. Railroad, 142 Mo. App. l. c. 316; Walker v. Railroad, 178 S. W. 108.] Whether appellant owed respondent a legal duty to assist her to alight is not an important inquiry in this case, since the conductor actively undertook to aid her, and the law is that in making such an effort it was his duty to use due care, and appellant is responsible if respondent was injured by reason of his failure to do so. The authorities are in accord. [Hanlon v. Central Railroad Company of New Jersey, 187 N. Y. 73, 10 L. R. A. (N. S.) 411, and note; 10 Ann. Cases, 366 and note; Williams v. L. & N. Railroad Co., 150 Ala. 324; Ray v. C. & N. W. Railway Co., 163 Iowa, l. c. 432; L. & N. Railroad Co. v. Lee, 140 Ky. l. c. 93; Hager v. P. & R. Railroad Co., 261 Pa. St. 35£; Central of Georgia Railroad Co. v. Carlisle, 2 Ala. App. l. c. 517; Younglove v. Pullman Co., 207 Fed. l. c. 803; N. C. & St. Railway v. Newsome, 141 Tenn. 8; 2 Shearman & Redfield on Negligence (6 Ed.) sec. 510, p. 1383.]

In this case if the jury found that in releasing respondent's arm at the moment she says he did and in bumping hard against her just as she lifted one foot to step from the platform down to the first step, the conductor was negligent and that these acts of his precipitated respondent to the pavement, they were justified in rendering a verdict for her, so far as the present question is concerned. Appellant contends that "the mere fact that the conduc-

*Rushing Passenger: Accident.*

tor bumped into plaintiff will not support the allegation of negligence." "The mere fact" alluded to is not the whole evidence. The evidence justifies a finding that the conductor knew or ought to have known that respondent was at the edge of the platform and that she was just starting to step off the platform down to the first step below it; that in this position of obviously unstable equilibrium respondent very easily would be overbalanced by a bump such as the evidence tends to prove was given her; that with this knowledge and while respondent was in this position the conductor gave her a "very hard bump" from the effects of which she had no chance to protect herself; that this was the result of the conductor's own hurried movement in turning to speed, for appellant's benefit, the next passenger whose turn it would be to alight; that no person other than the conductor was in any way, directly or indirectly, responsible for the "bump" given respondent. The evidence was sufficient to justify the submission of the case to the jury. [Tanchof v. Metropolitan St. Railway Co., 177 S. W. 813; Hanlon v. Central Railroad Co. of N. J., supra; L. & N. Railroad Co. v. Lee, supra; Ray v. Railway Co., supra; Hager v. P. & R. Railway Co., supra; Drew v. Sixth Ave. R. Co., 26 N. Y. 49; I. & G. N. Railroad Co. v. Mulliken, 10 Tex. Civ. App. 663; Louisville Railroad Co. v. Wood, 113 Ind. 544; Schimpf v. Harris, 185 Pa. St. 1. c. 49, 50; I. & G. N. Railroad Co. v. Hugen, 45 Tex. Civ. App. 326.]

Appellant cites cases which announce the general doctrines that negligence must be proved, that there can be no recovery for the results of an unavoidable accident, and that the mere proof of an injury or an accident does not tend to prove negligence. These cases are well enough, but are not applicable here. Appellant had the benefit of an instruction covering these principles. The decision in Markle v. Pittsburg Rys. Co., 238 Pa. 353, is thus summarized in the syllabus: ". . . A nonsuit should be granted where the evidence went no further than to show that plaintiff had tripped over the conduc-

tor's foot, without explaining how the accident happened, or establishing any negligence on the part of the conductor." This is in harmony with the rule stated in the cases already cited. If this case is to be construed to mean that a conductor might negligently trip an alighting passenger, while assisting her, and thereby throw her from a car without rendering the carrier liable, it is contrary to all decisions. If it means that it is not negligence for a conductor to trip and precipitate to the ground a passenger upon the platform in the act of beginning to alight from the car which has stopped to discharge passengers, it is still out of accord with the decisions in and out of Pennsylvania, as those cited show.

II.  The objection to the photograph of respondent's foot was that it had not been "properly identified or proved as a picture of plaintiff's foot." Respondent testified positively it was a picture of her foot; that she recognized it as a picture of her foot, and recognized the background and surroundings as those present when the picture was taken; that she was told the picture was developed by Mr. Knorr. No objection was made to this last. This was ample to justify a finding that the picture was one made of respondent's foot and to warrant its admission over the objection made. Besides, it could hardly be prejudicial. Respondent's foot was shown to the jury and X-ray pictures showing it fully were in evidence and were explained at length.

**Photograph.**

III.  It is argued the damages allowed are excessive. Respondent is single, lived with her parents on a farm and was twenty years of age at the time she was injured. She helped with the house work and engaged in dressmaking at her home. Her health had been good and she had had no previous trouble with her leg and foot. After she fell she was taken by appellant's agent to one of appellant's physicians who gave her some liniment on the theory that her ankle was

**Excessive Damages.**

sprained.  Her father took her home and thenceforward for some days she suffered considerable pain and was confined to her bed about two weeks.  Her ankle got worse rather than better.  She was unable to sleep during part of this time and subsequently consulted other physicians and surgeons.  Examinations by several of these resulted in their telling her they could do nothing for her.  There was testimony of Dr. Donaldson that the bones of the left ankle are in an abnormal position; that the astragalus or ankle bone, which articulates with the bones of the leg, is split or broken; that the tendons or ligaments in the ankle are "torn loose;" that the "bones of the foot are rotated outward," and this has a "decided effect on the use of the foot."  Dr. Egan testified his examination showed "her foot was badly deformed; that the foot and toes dropped over causing a bulging of the foot in the instep; that the ligaments were torn loose from the astragalus; that previous to the injury there was nothing wrong with her foot or her nervous condition; that since the injury she is very nervous and 'any little excitement shakes her all to pieces;' that the condition of the foot is such as would cause a pain and hinder her to a certain extent in walking because the foot does not have the spring in walking."  Dr. Neal testified the "left foot has a chronic dislocation of the ankle, astragalus turned forward, with a rupture of the ligaments holding the ankle joint in position.  The ligaments holding the bones of the leg to that of the ankle are torn;  that this rupture of the ligaments or tendons permits the foot to drop outward and forward; and the effect of this upon the use of the foot is to cause the astragalus to turn, or the foot being in a fixed position, the leg tends to go over it; that this would be a hindrance in walking; that it would cause pain when in that position."  Dr. Frazier testified to the rupture of the flexor tendons attached to the third and fourth tarsal bones and that these slip out of place very easily and fall out of place "practically without her control;" that the muscles of the ankle have been torn or

stretched in such manner as to cause her foot to rotate outward; that this will "cripple her walking and interfere with her walking as long as she lives."

There was evidence these conditions were caused by the fall, that they were incurable and probably would get worse rather than better. Respondent said she could not use her left foot to run her sewing machine; that it still pained her when she walked; that she could walk several blocks by resting occasionally. The evidence showed the left foot and leg had shrunk some. The trial occurred five and one-half years after the injury. There was some evidence tending to show less serious effects and some probability that an operation might help respondent's foot. On this evidence the court is of the opinion that the judgment should not be affirmed for the whole sum allowed.

If respondent will, within ten days, remit the sum of $2500 the judgment will be affirmed for $7500 as of the date of the verdict. Otherwise, the judgment will be reversed and the cause remanded. *Ragland* anl *Woodson, JJ.*, concur; *Graves, J.*, concurs except that he thinks the judgment should be reduced to $6000.