**SMALL et al. v. KIEL.**

**In re ST. LOUIS PUBLIC SERVICE CO.**

**No. 11236.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 2, 1939.

James J. Milligan, of St. Louis, Mo., for appellants.

William H. Allen, of St. Louis, Mo. (T. E. Francis and O. P. Owen, both of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This appeal presents the question whether the court below was warranted in setting aside allowances made by a special master on account of personal injuries to Chesley T. Small and Charlotte Small Sweazea, and in substituting its own findings fixing the amount of such damages.

The St. Louis Public Service Company is a street railway company operating street cars in the City of St. Louis, Missouri. It went into receivership April 15, 1933, and on June 14, 1934, Henry W. Kiel was appointed trustee in a debtor proceeding for reorganization of the company under Section 77B of the amended Bankruptcy Act, 11 U.S.C.A. § 207, in which capacity he has since continued to serve. In the reorganization proceedings, a special master was appointed to pass upon claims against the St. Louis Public Service Company. Among the claims filed were those of Chesley T. Small, claiming the amount of $60,000, and Charlotte Small, claiming a like amount. These claims are predicated upon personal injuries alleged to have been suffered by each of the claimants and property damage sustained by Chesley T. Small on May 12, 1932, at which time these claimants, together with one Erma Perry, were riding north bound on Taylor Avenue in the City of St. Louis, Missouri, in an automobile owned and driven by Chesley T. Small. The car had stopped near the east curb of Taylor Avenue, where it was struck by a street car operated by the St. Louis Public Service Company. The responsibility of the company for the injuries is not questioned; neither was it an issue below, the sole issue being the amount of damages sustained by each of the claimants.

By consent, the claims were heard together by the special master, who made and filed his report, finding that claimants were injured and that the automobile of Chesley T. Small was destroyed, through the negli-

gence of the Public Service Company. He recommended that Chesley T. Small be allowed as damages the sum of $18,000; that Charlotte Small be allowed as damages the sum of $17,000. Exceptions to the report were filed by appellee, and on hearing, the lower court held the awards to be excessive, reducing the award made to Chesley T. Small to $10,000, and the award to Charlotte Small to $9,000.

Subsequent to the sustaining of appellee's exceptions, claimant Charlotte Small intermarried with one Sweazea, and upon suggestion of the change of her name, it was ordered that the prosecution of her claim proceed under the name of Charlotte Small Sweazea.

On this appeal, appellants challenge the action of the lower court in holding the allowances made by the special master excessive, and in substituting its own findings as to the damages suffered. It is urged that all reasonable presumptions are in favor of the findings of the special master who heard the witnesses. The argument is one properly addressed to the lower court when considering exceptions filed to the report of the special master. When such findings are approved by the trial court, they will not generally be disturbed by the reviewing court, but when disapproved by that court, they are no longer clothed with the presumption of correctness any more than a verdict of the jury set aside by the court as excessive is on appeal presumed to be correct. Of course, if the lower court in reviewing the findings of the master or referee has manifestly disregarded the presumption of correctness, in abuse of its judicial discretion, we should reverse. Rasmussen v. Gresly, 8 Cir., 77 F.2d 252; Dickinson v. Riley, 8 Cir., 86 F.2d 385.

General Order in Bankruptcy 47, 11 U. S.C.A. following section 53, provides:

"The reports of referees in all proceedings [in bankruptcy] shall be deemed presumptively correct, but shall be subject to review by the court, and the court may adopt the same, or may modify or reject the same in whole or in part when the court in the exercise of its judgment is fully satisfied that error has been committed."

On this appeal, we must assume that the court, in the exercise of its judgment, was fully satisfied that error had been committed by the special master.

Equity Rule 61½, 28 U.S.C.A. following section 723, is almost identical with the above quoted rule.

In Roosevelt v. Missouri State Life Insurance Company, 8 Cir., 78 F.2d 752, we had occasion to consider a case in which the lower court set aside the findings of the special master and entered its own findings. We there said [page 756]: "The report of the master, when submitted to the trial court, is clothed with the presumption of correctness, and if it is approved by the trial court it is clothed with the presumption of correctness in the appellate court, but where the trial court, notwithstanding this presumption, has disapproved and set aside the report, then it cannot be said that the presumption of correctness is attributable to it in the appellate court. That presumption is overcome by the adverse finding of the lower court, and we must accept the findings of the court as presumptively correct, although the presumption is doubtless weakened by the fact that its findings are in conflict with those made by the master."

In the case of Wilson v. Hall, 4 Cir., 81 F.2d 918, the court considered the effect to be given to findings of a referee who took the evidence and heard the witnesses, when his findings were set aside by the district judge. After observing that the matter was covered by General Order in Bankruptcy 47, the court said [page 919]: "Where, as here, the court rejects the finding of the referee, it is the finding of the court and not that of the referee which is considered presumptively correct upon appeal; but the appellate court will not, in reviewing the facts in such case, give to the court's finding as great weight as it will in a case where the court has itself seen and heard the witnesses, or has affirmed a finding by the referee by whom they have been seen and heard."

In Re Byrd Coal Co., 2 Cir., 83 F.2d 190, the court considered the extent of the power and authority of a trial judge to review findings by a referee. In the course of that opinion, it is, among other things, said [page 192]: "Perhaps it is a mistake logically to refine the scope of the review; General Order 47 (11 U.S.C.A. following section 53) states the extent of it accurately enough, and though it refers to 'reports' of referees, it undoubtedly was meant to cover not only their reports as special masters, but their orders as 'courts of bankruptcy.' All their findings are 'presumptively correct' and should stand unless the judge 'is fully satisfied that error has been committed,' but they are reviewable though the review involves discrediting witnesses."

The only evidence introduced by the defendant was documentary in character. It was the claim of Chesley T. Small that he had sustained a fracture of the last lumbar vertebra and a fracture of the left sacroiliac joint. Expert testimony was to the effect that the X-rays showed small shadows in the lower portion of the last lumbar vertebra which looked like small fragments of bone torn away, but it was doubtful whether this condition was a congenital one, or whether it was a new one. The evidence as to the injury of the sacroiliac joint was based upon an X-ray showing a shadow slightly more pronounced than the shadow at the same point in the other sacroiliac joint. But it was difficult to tell what the condition was, and the testimony showed that it might have been a natural congenital condition or a malformation of bone.

There was also a claim that the injuries sustained resulted in permanent disability, but the evidence left this question in conjecture. This claimant was in the hospital all told but eleven days, and he underwent no operation. Under date December 29, 1934, he wrote a letter to Rumford Baking Powder Company, in which he made reference to starting a new machinery development business in May, 1933, and some discouragements that he had met in that business. Among other things he said: "Today I am quite well and have been for the past eighteen months, and I am proud to tell you that I have developed and have here at St. Louis more efficient machines of the style necessary for your uses than I have had, all built under new patents which I alone own and control."

He had filed a suit for personal injuries in 1925 against one Harry Clymer for injuries sustained in an automobile accident wherein he alleged he sustained injuries to his back. In that case he alleged that his "back and muscles, bones, ligaments, tendons, nerves, tissues and flesh thereof were severely contused, bruised, wrenched, twisted and inflamed;" that his left leg and thigh and the bones and ligaments thereof were bruised, dislocated and twisted, and that he suffered severe nervous shock and that he would continue for an indefinite period of time to suffer from such injuries.

This evidence was too uncertain, speculative and conjectural to compel an affirmance of the referee's damages. Kimmie v. Terminal Railroad Ass'n, 334 Mo. 596, 66 S.W.2d 561; Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328; Lebrecht v. United Railways Co., Mo.Sup., 237 S.W. 112; Bante v. Wells, Mo.App., 34 S.W.2d 980.

In support of his claim of damage to his earning capacity, Small testified in chief that in the ten years prior to the accident he had made all the way from $3,000 to $12,000 a year, and that he averaged right around $7,000 a year; that as a result of the accident his earnings were reduced to about $2,400 to $2,600 a year. On cross-examination, he testified that he didn't think he had ever paid an income tax before 1932; that he started a new business in 1933, which he conducted under the name of C. T. Small Development Company; that he did not recall how much he made before the year of the accident; that prior to the injury, his profits depended upon his salary and his earnings; that his salary was $50 a week, but he didn't receive it; that the business was so bad in the latter part of 1931 that they all agreed to change it to $25 a week, but he didn't think he was paid the $25 a week; that he did not think he was getting this $25 per week at the time of the accident. On this testimony, it seems doubtful whether he had received anything for personal services rendered by him for a considerable time prior to the accident. There was little basis for awarding any substantial sum by reason of any loss of earning capacity. Moses v. Klusmeyer, 194 Mo.App. 634, 186 S.W. 958; Flintjer v. Kansas City, Mo.App., 204 S.W. 951.

Passing now to the claim of Charlotte Small, it appeared that in 1916 she had received permanent injuries to her spine, for which she had recovered a judgment in the sum of $7,500. Her injuries suffered in the accident here involved, as described from the hospital records, indicate injuries to the tip of the spine, the right knee, tenderness in the upper lumbar spine, a cut on the left side of the nose, contusion over the left leg and gluteal region, tenderness over the coccyx, and an impacted fracture of the first lumbar vertebra. She had an operation to remove the fractured portion of the tip of the coccyx, and she was then placed in a plaster jacket. There were claims of injury to the teeth, although the X-ray did not reflect such injury.

She testified that on January 24, 1925, she had had an accident on a street car, for which she was paid damages; that in

448

1916, she fell in getting off a street car and filed suit against the railway company. She recovered a verdict for $7,500, which she settled for $5,000. In that case she alleged that she was permanently injured. She testified that following the injuries of 1916, she was operated on for a bone correction; that her kidneys were affected, and that her injuries were permanent. She had been married to Mr. Hanley, who divorced her on account of the operations she had mentioned, because she could not have children. She divorced one Lande in 1917 and later married a Mr. Kraleman. She had also married a Mr. Hamilton, who divorced her, and since the trial of this action she had married Mr. Sweazea.

■ Without going into the details of the testimony with reference to her physical injuries, we think the trial court might well have found that the injuries suffered by her as the result of this accident were not permanent. While she testified that she was earning from $2,500 to $3,000 a year before the accident, on cross-examination it appeared that this was from 1920 to 1922. Her testimony as to earnings was indefinite and unsatisfactory. It appeared that she had engaged in business on her own account, had shops at different places, and employed various employees, but it was incumbent upon her to show what, if any, loss of her earnings arising from her labor she sustained as a result of this accident. The profits, if any, that might have been received from her business were speculative and conjectural. Flintjer v. Kansas City, Mo.App., 204 S.W. 951.

■ These accidents occurred in Missouri, and it may not be out of place to note what the courts of that state have held on the question of excessive damages for personal injuries.

Our attention is called to Cole v. St. Louis-San Francisco Ry. Co., 332 Mo. 999, 61 S.W.2d 344, in which a railway brakeman earning $200 a month, suffered the loss of a leg, which, of course, permanently incapacitated him from following his vocation. He received a verdict of $30,000, which the Supreme Court reduced to $10,000.

In Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S.W.2d 865, plaintiff, earning $2,100 a year in railroad work, and thirty-nine years old, was permanently disabled so that he could not follow his vocation. A verdict for $13,500 was reduced by the Supreme Court to $8,000.

In Lackey v. Missouri & K. Interurban Railway Co., 305 Mo. 260, 264 S.W. 807, plaintiff, a young woman twenty years old, a dressmaker, suffered injuries to her left foot and ankle which left the bones of the ankle in an abnormal position, with the tendons or ligaments torn loose so that the bones of the foot rotated outward, crippling her permanently. The testimony showed that this would cripple her in walking as long as she lived. She obtained a verdict for $10,000, which the Supreme Court reduced to $7,500.

In Corn v. Kansas City, etc., Railway Co., Mo.Sup., 228 S.W. 78, plaintiff sustained injuries to her hip, back, chest and nervous system and a broken rib. Medical testimony was to the effect that there were changes in the lungs, and that she probably would never recover from the effect of the injury. She had a verdict for $16,000, which was reduced by the trial court to $10,000, and by the Supreme Court to $7,500.

We can not say that the court abused its judicial discretion in setting aside the allowances made by the special master, nor can we say that the allowances made by the court are inadequate. The judgment appealed from is therefore affirmed.