## In re CARMODY.
### No. 203.

District Court, S. D. Iowa, Central Division.
Oct. 24, 1941.

A. H. Sargent, of Cedar Rapids, Iowa, and C. G. Lee, of Ames, Iowa, for petitioner Equitable Life Assur. Soc. of U. S.

Ed. J. Kelley, of Ames, Iowa, for debtor.

DEWEY, District Judge.

This matter is before the court on a petition by the Equitable Life Assurance Society of the United States to review an order of the conciliation commissioner in and for Story County, Iowa, wherein he found and determined the value of certain real estate comprising 222 acres belonging to the debtor to be $110 an acre.

The proceedings had been before the commissioner on proper reference for sometime and the initial appraisement had been made under subsection s of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s. Later, the above named secured creditor asked for a reappraisal of the property under that provision of Subsection s(3) providing " * * * That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, * * *."

Such a hearing was had before the commissioner and evidence was introduced before him on July 28, 29, 30 & 31, 1941. His finding and order determining the reappraisal value was made on the 12th day of September, 1941.

The secured creditor duly presented its application for review on this order, setting out its assignments of error, and the record has been certified to the court for such review. A transcript of the evidence was taken and transcribed by a court reporter and the same has been duly certified by the commissioner to this court as such transcript, and the same was introduced in evidence and has been read and considered by the court at the review.

The matter of the review came on for hearing in open court at Des Moines, Iowa, on the 13th day of October, 1941, the parties being represented, and the same was argued and submitted.

The assignments of error are twenty-three in number, but, in general, claim that the order entered by the conciliation commissioner was erroneous; 1st, because the referee had arbitrarily refused to permit the petitioning creditor to introduce certain

rebuttal testimony; and, 2nd, that the commissioner did not give a fair consideration to all of the evidence introduced at the hearing and that the conclusion of the commissioner as to the value was not in conformity with the evidence.

■ The evidence consisted entirely of the opinions and testimony of expert witnesses, each side being permitted and offered five witnesses. As stated above, the testimony before the commissioner took four full days and I am unable to say that the commissioner erred in refusing to take additional evidence bearing upon the questions of value, as it amounted to cumulative evidence, and the condition of the property was gone into exhaustively by the experts and proffered testimony in the court at the time of the hearing on the review was not such that would indicate that if it were added to the testimony heard before the commissioner it would in any way affect his conclusion.

From the above statement it clearly appears that the question determined by the commissioner was one of fact and the scope of the power and authority of the judge on the review under this situation is important. Added importance to these questions of the amount of the appraisal under the Frazier-Lemke Act (§ 75 of the Bankruptcy Act) is indicated by its far reaching consequences. Under the Act the farmer may, and in this case intends to, pay into court the amount of the appraised value and have the real estate released, free and clear of all liens and encumbrances.

The parties have presented exhaustive briefs on the question of the scope of the authority of the court in these reviews on questions of fact, but it seems to me that that question is governed by Rule No. 47 of the General Orders in Bankruptcy of the Supreme Court of the United States, 11 U.S.C.A. following section 53. Prior to the adoption of the Chandler Act, which became effective on September 22, 1938, General Order #47 read as follows: "The reports of referees in all proceedings under the Act * * * shall be deemed presumptively correct, but shall be subject to review by the court, and the court may adopt the same, or may modify or reject the same in whole or in part when the court in the exercise of its judgment is fully satisfied that error has been committed: * * *."

And this general order, in substance, has been in effect since April 24, 1933.

■ It will be noted that this order by its terms refers only to "reports" of the referees, but it has been determined by the Second Circuit in Re Byrd Coal Company, 83 F.2d 190, that General Order #47, defining the scope of the review and referring to referee's "reports", is intended to cover orders of referees in courts of bankruptcy. And this case and ruling is cited with evident approval by the Eighth Circuit in the case of Small v. Kiel, 101 F.2d 444, 446.

Subsequent to the passage of the Chandler Act, and on Feb. 13, 1939, the Supreme Court of the United States changed General Order #47 to read as follows: "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

Prior to this change in General Order #47 the Circuit Court of Appeals of this Circuit had laid down the rule with reference to the scope of the authority and power of the judge on review in the case of Rasmussen v. Gresly, 77 F.2d 252, 254, as follows:

"The determination of a referee in bankruptcy of issues of fact, based upon the evidence of witnesses appearing in person before him, where such determination must rest upon the credibility of the witnesses and the weight of their evidence, should ordinarily be accepted upon review, except in those cases where it is obvious that the referee has made a mistake. [Citing cases.] A different rule would virtually make a review of the findings of a referee as to issues of fact which depended for their correctness upon the credibility of witnesses who had personally appeared before him and upon the weight of their evidence, a trial de novo. * * *

"The credibility of the witnesses and the weight of the evidence being for the referee to determine, we think the reversal of his order by the court below was not justified.

"The order appealed from is reversed, and the case remanded, with directions to disallow the claim."

■ The change in General Order #47 in limiting the scope of the power and authority of the judge from considering the

findings of fact of a referee as "presumptively correct" to accepting his findings of fact "unless clearly erroneous," certainly did not liberalize the court's power and authority under the rule adopted by Judge Sanborn in the Rasmussen v. Gresly case, supra.

The fact question here for determination is purely one of the credibility of the witnesses and the weight that will be given to their evidence by the trier of the fact question.

I have carefully read the voluminous transcript of the record, and unless the appearance, conduct and demeanor of the witnesses while testifying would have created a different impression than the printed record, I would have found the value of the farm in question to have been from $125 to $135 an acre. But under the foregoing law, I cannot say that the finding of fact that was made by the commissioner was clearly erroneous and his report and appraisement must be approved and confirmed.

The Clerk will therefore enter the following order:

The above entitled matter having come on for hearing in open court at Des Moines, Iowa, on October 13, 1941, on a petition to review an order made by the conciliation commissioner dated September 12, 1941, and finding and determining the value of the real estate owned by the debtor comprising about 222 acres at $110 an acre is approved and confirmed. The Equitable Life Assurance Society of the United States excepts.