ADELE BOULOS, Respondent, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 41338—223 S. W. (2d) 446.

Division One, September 12, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, October 10, 1949.

*Charles L. Carr, J. D. James, Hogsett, Trippe, Depping, Houts & James* for appellant.

*Ben W. Swofford, N. R. Fischer* and *Laurence R. Smith* for respondent.

766

VAN OSDOL, C.—Action for personal injury. Upon trial plaintiff was awarded $4500 by the jury and defendant perfected its appeal from the ensuing judgment to the Kansas City Court of Appeals. Plaintiff had charged defendant's bus ''was so carelessly and negligently operated, controlled, and maintained by the defendant, its agent, servant, and employee, that it was caused to lurch and jerk in a sudden, violent, and unusual manner - - - causing this plaintiff to be thrown violently to the floor.''

In the Kansas City Court of Appeals, the defendant-appellant contended (and herein contends), (1) the trial court was erroneously inconsistent in submitting specific negligence by Instruction No. 1, and additionally authorizing the jury to infer negligence under the res ipsa loquitur doctrine by Instruction No. 2. Defendant-appellant further contended, (2) that the evidence did not support the submission a particular agent (the operator of the bus) caused the bus to lurch; (3) that testimony of the movement of the bus consisted of conclusions elicited in a manner improper and prejudicial and by leading, suggestive and argumentative questions; and that (4) a photograph of plaintiff was erroneously admitted into evidence. And defendant-appellant finally contended, (5) the jury's award ($4500) was excessive.

In reviewing the case, the Kansas City Court of Appeals, by majority opinion, decided plaintiff's case was erroneously submitted to the jury upon ''both specific negligence and negligence under the res ipsa loquitur theory,'' and reversed and remanded. Boulos v. Kansas City Public Service Co., Mo. App., 215 S. W. 2d 750 at page 752. But the cause was transferred to this court upon the request of a dissenting judge (215 S. W. 2d at page 754). We will endeavor to determine the cause as if here on original appeal. Section 10, Article V, Constitution of Missouri, 1945.

At approximately 7:30 o'clock in the morning of November 23, 1943, plaintiff and her daughter Rose boarded defendant's bus intending to go to their places of employment. They were unable to find seats and stood in the aisle, the mother (plaintiff) ''holding on to the third seat of the bus toward the front.'' The daughter, Rose, testified her mother was holding on with one hand, ''mother was

holding on to the third seat, I on to the second, she on the right of me. Then, the sudden stop of the bus - - - Before I knew it, Mother was sitting, in a sitting position in the aisle of the bus - - - I would say it (the bus) was going about an average of twenty miles an hour when it just suddenly came to a sudden stop." The witness had "no knowledge whatever as to why the bus made any movement there." The mother (who, a native of Syria, was obliged to testify through an interpreter) stated, "When I got in the car, my daughter come behind. I walk in the middle of the aisle and hold the chair with my hand. Then the bus starts quick. I got right off, my foot under me - - - I fall right down in the aisle, one of my legs under me - - - as I fell, the back hurt, the pain right in the back."

Another passenger described the occurrence as follows, "Just the other side of Prospect—Park Avenue—that is where the bus is pretty jammed, everybody getting off and on—the way I see it, the bus started to cross, and all at once the bus kind of stopped, and then everybody came on back—you know what I mean—started falling. I had a good hold. This woman fell down, then the woman was clear to the floor. - - - Everybody was pretty near off their feet. This particular woman was the one that hit the floor."

Instruction No. 1, proffered by plaintiff and given by the trial court, is as follows,

"The court instructs the jury that if you find and believe from the evidence that - - - plaintiff, after boarding said bus, if so, took a position standing in the aisle and holding onto a seat thereof while said bus was moving - - - and that at said time and place the defendant by and through its agent and servant in charge of and operating said - - - bus knew, or should have known, by the exercise of the highest degree of care that the plaintiff was so standing in the aisle of said bus - - - and if you further find and believe from the evidence that the defendant by and through its agent and servant in charge of and operating said bus at said time and place caused the same to lurch and jerk violently and suddenly and in an unusual and violent manner, if so, and that as a direct result thereof the plaintiff's body was caused to be thrown - - - upon the floor of said bus in the manner described in evidence - - - and if you further find and believe from the evidence that the aforesaid sudden, violent, and unusual jerk and lurch - - - was negligent under all the facts and circumstances in evidence, if so, and that the plaintiff was injured as a direct and proximate result thereof, if so, then your verdict must be in favor of the plaintiff and against the defendant - - - ."

And the trial court gave Instruction No. 2 proffered by plaintiff, which is as follows,

"The court instructs the jury that if you find and believe from the evidence that the defendant by and through its agent and servant in charge of and operating the - - - bus mentioned and described in evidence and upon which plaintiff was a passenger -- - - caused the same to lurch and jerk violently and suddenly and in an unusual and violent manner, if so, and that as a direct result thereof the plaintiff's body was caused to be thrown - - - onto the floor of said bus - - - ' and she was injured as a result thereof, if so, then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence upon which the jury may infer that the defendant was negligent and you may so find unless you find and believe from other evidence and from all the facts and circumstances in evidence that said sudden, violent, and unusual jerk ■■ and lurch, if any, of said bus was not due to the negligence of the defendant."

■ (1) As stated defendant-appellant contends the trial court erred in giving Instructions Nos. 1 and 2. Defendant-appellant asserts Instruction No. 1 and the "first part" of Instruction No. 2 submitted specific negligence, and the "latter part" of Instruction No. 2 authorizes the jury to infer negligence under the doctrine of res ipsa loquitur. Plaintiff-respondent, on the other hand, contends the Instruction No. 1 does not submit specific negligence, and the Instruction No. 2 properly authorized the inference of negligence under the res ipsa loquitur doctrine. Did Instruction No. 1, and the "first part" of Instruction No. 2, submit specific negligence? If so, there was "no room for" and it was error to submit general negligence or advise the jury they were authorized to infer negligence under the res ipsa loquitur doctrine. Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S. W. 2d 825; Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. 2d 21.

In general and on principle the doctrine of res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557; Charlton v. Lovelace, 351 Mo. 364, 173 S. W. 2d 13; Welch v. Thompson, 357 Mo. 703, 210 S. W. 2d 79. While the doctrine is a rule of circumstantial evidence, it does not rest for its application upon the specific circumstances peculiar to the individual occurrence in pointing of their own force to a specific human fault, but the rule in its strict and distinctive sense is based upon "the generic circumstances peculiar to the class of physical causes producing the occurrence, and points to no specific human fault." 38 Am. Jur., Negligence, § 297, p. 992, at page 994; Kapros v. Pierce Oil Corporation, 324 Mo. 992,

25 S. W. 2d 777; Tayer v. York Ice Machinery Corporation, 342 Mo. 912, 119 S. W. 2d 240; Belding v. St. Louis Public Service Co., Mo. Sup., 215 S. W. 2d 506, and Mo. App., 205 S. W. 2d 866.

In the cases cited by defendant-appellant the petitions or the instructions filed or proffered by plaintiffs actually or in effect plead or submit, as negligent, definite acts or conduct of particular agents or employees of defendants in circumstances which would justify the conclusions the alleged or submitted acts in such circumstances were negligent. In these cases the acts or conduct resulting in injury were so simple that, in each instance, the mere statement of the acts or conduct causing the injuries in the pleaded or hypothesized situations was as nearly specific as could be expressed in · words. The pleadings or submissions in these cases were held to be those of specific negligence. In Stolovey v. Fleming, 328 Mo. 623, 8 S. W. 2d 832, the allegation of the petition stated wherein defendants' "operators in charge of said car" were negligent, that is, "in starting the car while the plaintiff had one foot upon the step and trying to get thereon as a passenger." Of like effect are the cases of Lammert v. Wells, 321 Mo. 952, 13 S. W. 2d 547 (while plaintiff was "in the act of leaving said car and before plaintiff had stepped therefrom onto the street, the agents and servants of the defendant in charge of and operating said car - - - negligently caused and permitted said car to start"); Duggan v. St. Louis Public Service Co., Mo. App., 56 S. W. 2d 626 ("defendant, its agents and servants then and there in control of said car, and while this plaintiff was in the act of alighting, caused the said car to jerk, lurch and jump in a violent, sudden, and unusual manner, without any warning"); Mendenhall v. Springfield Traction Co., Mo. App., 26 S. W. 2d 50 ("when she got on she attempted to pay the motorman and did pay him - - - but the moment that she paid him and before she had time to turn around and find a seat, he suddenly, carelessly, and negligently started up said street car with a jerk"); Hoeller v. St. Louis Public Service Co., Mo. App., 199 S. W. 2d 7 [while ▮▮▮ plaintiff was in the act of proceeding toward the exit door, the streetcar (as a result of the negligence "of the operator of" the streetcar) "was caused to be brought to a sudden, violent and unusual stop"]. In Grimm v. Globe Printing Co., Mo. Sup., 232 S. W. 676, the petition stated plaintiff was injured "on account of the negligence of the defendant or its operator in charge of the elevator in suddenly starting said elevator, or in permitting it to start, while the deceased was placing the machinery upon it, and without warning to deceased." In the case of Hughes v. East St. Louis City Lines, Mo. App., 149 S. W. 2d 440, the petition alleged that, through defendant's agent "in charge of the said motorbus," the motorbus "was caused to and did execute a sudden, violent and unusual turn." In Miller v. United Rys. Co. of St. Louis, 155 Mo. App. 528, 134 S. W. 1045, the petition

charged the motorman "so negligently and carelessly managed and ran said car that he suffered and permitted the same to be collided with a team of horses and wagon." In State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S. W. 2d 68, the paragraph three of the petition, in effect, charged the operator was negligent, in the pleaded situation, in that he "violently drove the front end of the street car into the rear end of plaintiff's automobile." In the case of Jones v. Central Oil Co., 350 Mo. 91, 164 S. W. 2d 914, the plaintiff did not intend to rely on the res ipsa loquitur doctrine and submitted his case by hypothesizing in effect that defendant's driver "negligently caused, allowed and permitted (said transport truck) - - - to run into, strike" and collide with the rear end of plaintiff's vehicle in such a hypothesized factual situation as would point out and justify the conclusion the conduct of the driver in "guiding" the truck was negligent.

These cases differ from cases wherein there is an unusual occurrence with attending circumstances, the physical cause of plaintiff's injury, sufficient to justify an inference of some kind of negligence for which defendant should be held responsible, but insufficient to point to the specific negligent act or omission, the legal cause of the injury.

In the instant case, it seems plaintiff was not in a position to see or to know, and she and her daughter did not know what the operator of the bus did, or failed to do, which caused the bus to violently lurch. The operator's act or omission causing the bus to lurch was neither submitted nor clearly shown by plaintiff. The circumstance of the occurrence was such as would not ordinarily happen if those in charge were in the exercise of due care. Plaintiff was submitting her case in reliance upon the violent and sudden lurch of the bus, which bus was operated and controlled by defendant's agent in charge. She could show and submit her position in the bus; the operator's actual or constructive knowledge of her position; the sudden lurch (the result of something the operator negligently did or did not do); and the effect of the sudden lurch upon her; but it seems she did not know—at least she did not allege, nor did she show and submit—what the operator negligently did or failed to do in causing the bus to lurch. And it seems she did not know what, if any, situation confronted the defendant's agent which may have actuated him to somehow cause the unusual movement of the bus. Was he constrained to slam on the brakes to avoid striking down a pedestrian, or to avoid colliding with another vehicle? And, if so, was this because he had negligently failed to look out? Or was the unusual movement due to his negligence in too abruptly applying the brakes, or in carelessly manipulating the gears?

As stated defendant-appellant contends the Instruction No. 1 submits specific negligence, and as stated defendant-appellant further contends (2) the submission, as specific negligence, was erroneous

because, it is said, in effect, no evidence supports the hypothesis the particular agent "in charge of and operating said bus" was the actor in causing the bus to lurch. The inference was reasonable in the circumstances that the defendant's agent "in charge of and operating said bus" somehow or in some manner operated the bus so as to occasion the unusual movement—he was, in fact, in control of and operating the bus; and plaintiff submitted such agent caused the bus to suddenly and violently ▮▮▮▮ lurch. But such submission of the particular agent as the actor was yet insufficient, we believe, to characterize the submission as that of specific negligence. Bergfeld v. Kansas City Rys. Co., 285 Mo. 654, 227 S. W. 106.

In the case of Price v. Metropolitan Street Ry. Co., 220 Mo. 435, 119 S. W. 932, it was alleged defendant "negligently caused and permitted the train on which plaintiff was riding - - - to come in violent collision with another train." This was said to be a charge of general negligence. Said the court (220 Mo. at page 454, 119 S. W. at page 937), "Had the petition averred a negligent collision of the two trains, and then proceeded to state that such collision was occasioned by the negligence of the gripman in the operation of the car, or the negligence of the conductor in the operation of the train, and *pointed out wherein they or either of them had been negligent* - - - then there would have been specific negligence." (Our italics.) In Bergfeld v. Kansas City Rys. Co., supra, 285 Mo. at page 665, 227 S. W. at page 109, it was said, "In order to allege specific negligence, as said in the Price case, there must not only be an averment as to the particular servants whose negligence is complained of, but it must also be pointed out wherein they, or either of them, have been negligent." See also Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S. W. 2d 197; Jones v. Kansas City Public Service Co., 236 Mo. App. 794, 155 S. W. 2d 775. In the Semler case the court adversely ruled defendant's contention that plaintiff by his proof was deprived of availing himself of the inference authorized by the res ipsa loquitur doctrine; the court said that, although plaintiff's evidence went to establish the occasion for the motorman making the sudden stop was the operation of a motor vehicle across the path and immediately in front of the defendant's streetcar, *"plaintiff did not* go further and attempt to *prove the specific negligent act* of defendant (such as a failure to maintain a proper lookout or reversing the car instead of applying an emergency brake) *in causing the streetcar to come to such a sudden and violent stop."* (Our italics.) And see again Belding v. St. Louis Public Service Co., supra.

We draw the conclusions Instruction No. 1 was not a submission of specific negligence, and the inference under the res ipsa loquitur doctrine authorized by Instruction No. 2 was permissible.

▮▮▮ (3) At the conclusion of plaintiff's evidence the trial judge expressed the view a submissible case had not been made "on the

question of whether the movement of the bus was unusual and violent." Thereupon, plaintiff asked and was granted leave to recall plaintiff's daughter, Rose, to the witness stand. Rose, an intelligent young woman, had been present in the courtroom during the colloquy between the trial judge and counsel concerning the sufficiency of the showing of an unusual movement of the bus. Upon interrogation by plaintiff's counsel the daughter answered questions as follows,

"Q. You have already described what happened there on the bus, and I would like to have you state whether or not the motion of that bus immediately preceding your mother's falling was a usual motion as you experienced it every day riding the busses, or was it an unusual motion? - - - A. It was very unusual. - - - Q. Had you ever personally observed that kind of motion, such as this was, before? - - - A. I had, but it wasn't quite as much a jar as this one was. Q. Was it a violent or easy motion of the bus? - - - A. I would say it was a violent, sudden stop."

The questioning was permitted over the objections of defendant on the grounds the questions were "prejudicial and leading, suggestive and argumentative, and it invades the province of the jury."

The questions were generally in the alternative, and in form were not so framed as to indicate the desired answer. Although the witness may have known the desired answer, yet, looking at the effect of the interrogation from that standpoint, the answers were consistent with her own former testimony of the movement of the bus. As stated, she had formerly testified the bus "suddenly came to a sudden stop." The daughter's statement, and the testimony of the physical effect of the movement of the bus upon the passengers, especially plaintiff, tends to show the movement was of unusual character. Compare Meyers v. Wells, Mo. Sup., 273 S. W. 110. The witness was not wholly inexperienced as a passenger on busses, and her description of the movement was not one wholly within the field of expert testimony. The St. Louis Court of Appeals has tacitly held the admission of non-expert testimony describing the movement of a train in language not entirely unlike that used by the witness Rose in describing the movement of the bus was not erroneous. Crenshaw v. St. Louis Public Service Co., Mo. App., 52 S. W. 2d 1035; Robert v. New York Central R. Co., Mo. App., 122 S. W. 2d 1. See again Meyers v. Wells, supra; and Laycock v. United Rys. Co. of St. Louis, 290 Mo. 344, 235 S. W. 91.

██ (4) Plaintiff was permitted to introduce her photograph into evidence. The photograph, like that affixed to plaintiff's certificate of naturalization, was taken nearly three years before plaintiff was injured—nearly seven years prior to trial. The picture was produced by plaintiff as a photograph of "the way" she "looked" before she was injured. No other witness directly testified the photograph was

a correct representation or portrayal of plaintiff as she appeared at the time she was injured. The photograph discloses plaintiff as in apparent good health and of rather heavy weight. A witness described plaintiff as "fairly plump" before her injury, after which, according to the witness, plaintiff lost "an excessive lot of weight - - - looked very ill to me." Plaintiff testified she weighed 170 pounds when injured, and now (at the time of trial) weighs 151½ pounds. Much must be left to the discretion of the trial judge in determining the admissibility of photographs. It is said photographs may be admitted into evidence in showing a person's physical condition at a particular time, when the evidence is relevant, quite as they may be introduced to show the condition of inanimate objects. Hoyt v. Chicago City R. Co., 166 Ill. App. 361; 32 C. J. S., Evidence, § 711, p. 614. The nearly three years of plaintiff's life intervening between the time the photograph was taken and plaintiff's injury had not wrought any substantial change in plaintiff's appearance, if verity is given to the testimony that her health was good until she was injured. The testimony of her health and weight prior to the injury bears out the photograph was a fairly correct likeness of plaintiff when she was injured. And considering the testimony of her health and weight when injured, we believe the admission of the photograph could hardly be held prejudicial. Lackey v. Missouri & Kansas Interurban Ry. Co., 305 Mo. 260, 264 S. W. 807.

■ (5) We will consider the evidence of the nature and extent of plaintiff's injuries from a standpoint favorable to plaintiff. She was 55 years of age when injured. Her health was good, "worked every day - - - take care of my children, the house." She suffered a severe fall, and immediately felt pain in her back. She was treated by a physician the following day, and was confined to her bed at home for about two weeks. For some months thereafter she was unable to regularly do her duties as a seamstress, nor was she able to continue her full duties as a housewife. She had operated a sewing machine "with her feet, knees and hands." Although she experienced pain, she was able to work regularly (with some overtime) from late November 1944 to late August 1945; since that time she has not been able to accept employment. She had earned the approximate average of $25 a week, after deductions.

The testimony of a daughter tends to support plaintiff's claim that she suffered vaginal bleeding within "three or four days." A physician, answering a hypothetical question, was of the opinion such functional bleeding was "probably precipitated" by the injury. Such a bleeding caused plaintiff to be hospitalized in 1946 and 1947 on two occasions for a total of 23 days. She was operated on for this trouble, the operation being described by a physician as dilation and curettage. Following further irradiation treatment the bleeding had ceased, although there is some probability the bleeding will recur.

For some years plaintiff has had osteoarthritis—a physical condition which may not become painfully manifest until a severe fall or trauma is experienced. She suffered pain when she fell and her back continues to be painful. A physician found muscle spasm in the lower back. The bending of the back from right to left is limited twenty-five or thirty per cent. Motions involving the lumbar spine and sacral region are painful. She is forgetful and has "dizzy spells." As stated, she has lost weight. Plaintiff's daughter testified her mother could not get up and walk "like she used to - - - we have to help her get up, can't sit too long - - - lies down most of the time."

We believe plaintiff's injuries justify an award in excess of that, even before remittitur ($2850), in Taylor v. Terminal R. Ass'n. of St. Louis, Mo. App., 112 S. W. 2d 944, cited by defendant-appellant. In the Taylor case, plaintiff's weekly earnings were $14 prior to his injury and he was able to earn $55 per month thereafter, although it was a reasonable inference he would suffer some loss of earnings in the future. In our case, although there was no direct evidence of permanency of injury, there is support for the inference plaintiff will not hereafter be able to operate a machine—this together with her inability to readily speak English practically incapacitates her from all income-earning employment. And plaintiff in the instant case did not suffer injuries of the apparently more serious nature as plaintiffs in Webb v. Missouri-Kansas-Texas R. Co., 342 Mo. 394, 116, S. W. 2d 27; and other cases cited by plaintiff-respondent. Having a regard for uniformity of awards (as well as for economic conditions), we are unable to say the verdict was excessive in any such substantial amount as would justify this court's interference.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.